GAMBRELL and wife, Respondents, v. CAMPBELLSPORT MUTUAL INSURANCE COMPANY, Appellant.

*No. 250. Argued April 30, 1970.—Decided June 5, 1970.*
(Also reported in 177 N. W. 2d 313.)

For the appellant there was a brief by *Z. F. O'Leary* and *Wolfe, O'Leary, Kenney & Wolfe,* all of Milwaukee, and oral argument by *Z. F. O'Leary.*

For the respondents there was a brief by *W. Dale Phillips* and *Phillips & Phillips,* all of Milwaukee, and oral argument by *W. Dale Phillips.*

HEFFERNAN, J. Summary judgment may be granted only when there is no factual dispute which requires reso-

lution by court or jury. The initial contention of the appellant is that a factual dispute exists. The company claims that there is an issue of fact to be tried as to the amount of loss, because nowhere in the record does there appear any information in respect to the equalized value of the property destroyed or the percentage to which the property was destroyed beyond the "bald" assertion of the building inspector's report that the damage exceeded 50 percent. We deem this a belated and untimely attack upon the administrative findings of the building inspection department. We see no evidence that this finding was challenged prior to this appeal.

More importantly, although the insurer was clearly an aggrieved party and was promptly notified of the findings of the building inspection department, it failed to utilize the remedies available to challenge the validity of the findings and order as explicitly and exclusively provided by sec. 66.05 (3), Stats. We accordingly conclude that no factual dispute exists in respect to the building inspection department's administrative finding. Its order is conclusive upon this court and upon the litigants herein. Inasmuch as it appears clear that there are no facts that require trial, the judgment must be affirmed unless it appears that the trial court erred in applying the law to the undisputed facts.

Sec. 203.21, Stats., is known as the valued policy statute, and it was primarily upon this statute that the trial judge ordered judgment for the plaintiffs. Sec. 203.21 reads as follows:

"**Total loss measured by amount written in policy.** Whenever any policy insures real property and the property is wholly destroyed, without criminal fault on the part of the insured or his assigns, the amount of the policy shall be taken conclusively to be the value of the property when insured and the amount of loss when destroyed."

This statute is the result of a strong public policy position taken initially by the Wisconsin legislature in 1874

and which has persisted almost uninterruptedly since. Kimball, *Insurance and Public Policy* (University of Wisconsin Press, 1960), points out the considerations that led to the passage of this act. It was considered that the overinsurance of property by owners presented a tempting opportunity for arson and, on the other hand, provided insurance companies with excessive premiums since losses were to be paid not on the basis of the face value of the policy but on the appraised loss. It was assumed that the valued policy act would result in better underwriting practices, by encouraging more realistic appraisals of property values at the time the insurance contract was issued. Dean Kimball points out, at page 241, "The basic indemnity principle of the insurance contract was thus overridden by statute in the affected situations."

Despite frequent attempts to set aside the valued policy law and one short period of repeal, this statute has remained on the statute books and has been given a uniform interpretation since its inception. 10 Wisconsin Law Review (1934–1935), Winfield V. Alexander, *Insurance: The Wisconsin "Valued Policy" Law,* page 248. That article points out that the construction of the statute, which has since been consistently followed, was first set forth in *Reilly v. Franklin Ins. Co.* (1877), 43 Wis. 449. Summarizing the rationale of *Reilly* and the subsequent cases, Alexander writes at page 249:

". . . as the statute was based on public policy, the provisions of the insurance contract were abrogated if inconsistent with the rights of the insured under the statute. This construction makes the provisions of the statute an integral part of the contract as though written into the policy. The literal meaning of the language of the statute is given full force, and wherever there has been a total loss of realty by fire without criminal fault, the value of the property at the time of destruction is the face value of the policy; this is also the amount of the loss and the measure of the damages."

The plaintiffs contend that the municipality's order to raze the building results in a total loss and that, therefore, the face value of the policy, or $7,500, is payable. Such appears to be the general rule. 6 Appleman, *Insurance Law and Practice,* p. 166, sec. 3822; 15 Couch, *Insurance* 2d, p. 417, sec. 54.164; 45 C. J. S., *Insurance,* p. 1008, sec. 913b; 44 Am. Jur. 2d, *Insurance,* p. 542, sec. 1631; Annot. (1963), 90 A. L. R. 2d, pp. 790, 792.

The Wisconsin court has never specifically decided the question, although in *Eck v. Netherlands Ins. Co.* (1931), 203 Wis. 515, 519, 234 N. W. 718, there appears the statement:

"We do not find it necessary to decide, and do not decide, that this was a constructive total loss by reason of the fact that a building permit was denied to the plaintiff to utilize the remains of the structure as a basis for its restoration."

The Wisconsin valued policy statute has, however, twice been interpreted by the Court of Appeals for the Seventh Circuit. *City of New York Fire Ins. Co. v. Chapman* (1935), 76 Fed. 2d 76, and *New Hampshire Fire Ins. Co. v. Murray* (1939), 105 Fed. 2d 212. Both of these cases held that, where there is a total loss, the language of an insurance contract pursuant to the standard fire policy set forth in sec. 203.01, Stats., limiting liability to the actual loss, must yield to the public-policy mandate of the statute requiring face-value recovery. *Chapman* adopted the rule set forth in 26 C. J. 351:

" 'If by reason of public regulations as to the rebuilding of buildings destroyed by fire, such rebuilding is prohibited, the loss is total, although some portion of the building remains which might otherwise have been available in rebuilding. So, also, if the insured building is so injured by the fire as to be unsafe and is condemned by the municipal authorities, the loss is total.' " *Chapman, supra,* page 77.

We are satisfied that the court of appeals has correctly interpreted the effect of a municipal order direct-

ing the razing of a fire-damaged building. An administrative order of a municipal building inspection department directing the razing of a burned building is a legislatively approved declaration that for public policy reasons the damage to the property constitutes a total loss.

The appellant contends, however, that its liability is nevertheless limited under the "rebuilding" clause; and the fact that the property cannot be rebuilt, appellant states, is "no concern of the insurers."

The insurance company's position is simply that, since the property owner is forbidden by law to repair the property, he has lost his option to recover in excess of the reduced amount of the policy and therefore must be content with $4,500.

It should be noted in passing that counsel for the insurance company acknowledged during oral argument that the building could not have been rebuilt in its entirety because it constituted a nonconforming use. He also acknowledged that the company had constructive notice of such nonconformity at the time the policy was issued.

We conclude that the company was equally chargeable with notice of sec. 66.05, Stats., that the building could not be rebuilt if it were damaged more than 50 percent. Accordingly, under the circumstances of this case, the property owner was from the very date of the policy denied the option to repair the building if the loss were more than 50 percent or if it were totally destroyed. Under the company's interpretation of the law and this policy, the insured, therefore, could never recover in this set of circumstances more than the reduced amount. Having paid a premium which guaranteed an indemnity of $7,500, the company now contends that such payment could be made only under what now appears to be impossible circumstances. We cannot concur in the urged interpretation.

Appellant further argues that the rebuilding clause is authorized by sec. 203.06 (2) (d), Stats. That clause provides that endorsement may be added:

". . . whereby the insurer agrees to reimburse and indemnify the insured for the difference between the actual value of the insured property at the time any loss or damage occurs and the amount that would be required to repair, rebuild or replace with new materials of like size, kind and quality . . . ."

We are not satisfied that such provision of the standard policy is applicable to a total loss of *real estate* which is specifically controlled by the valued policy statute. Moreover, the appellant fails to quote the statutory limitation on sec. 203.06 (2) (d) which appears in the final sentence of the same subsection:

"The attachment of such riders and endorsements to the standard fire insurance policy with respect to dwelling risks shall in no event result in the payment of a lesser amount than would otherwise have been paid had such riders and endorsements not been attached."

It is clear that the construction urged by the appellant would result in a payment of a lesser amount, a circumstance specifically forbidden by the statute.

The insurance company additionally argues that, even assuming that the valued policy law applies, the value on the property set forth in the statute is not $7,500 but the stated reduced value of $4,500. If that were the intent of the policy, we consider it misleading, since the insurance coverage allocated to the property destroyed appears on the face of the policy to be $7,500 and the policy purported under some circumstances to give coverage up to $7,500.

We do not pass upon the efficacy or propriety of the rebuilding clause where the loss to the property, unlike the situation we find to exist herein, is less than total. But where a total loss is concerned, even though it be a

constructive loss occasioned by the operation of law, the contract would purport to waive a legislative right conferred by the valued policy statute. The fundamental rule of interpretation regarding the valued policy statute as set forth in *Reilly v. Franklin Ins. Co., supra*, page 457, remains the law of this state:

". . . on grounds of public policy and in order to accomplish that end, it was provided that the amount of insurance written in the policy should be conclusive as to the value of the real property destroyed. Now the law is well settled, that where a statute is founded upon public policy, a party cannot waive its provisions even by express contract. 'The contracts of private persons cannot alter a rule established on grounds of public policy.' . . . The law of 1874 must be regarded as though written in the policy itself . . . ."

The insurance company contends, however, that it is exonerated from any losses not directly occasioned by the fire and which result in the orders of municipal authorities. It bases its contention upon sec. 66.05 (1) (c), Stats., "Acts of municipal authorities under this section shall not increase the liability of an insurer."

The company argues that, had it not been for the acts of the municipal authority, the property could have been repaired for an amount less than $7,500. While conceding *arguendo* that this may be factually true, we are not satisfied that it controls the company's liability. No "act of municipal authorities" caused the loss. Rather, the municipality's action was merely the recognition that, under legislatively sanctioned standards, the loss was complete. This determination could, of course, have been challenged, but unexplicably, in view of the insurance company's present position, no challenge was made. We thus see no occasion to conclude that the valued policy law and this portion of the municipal nuisance law are in direct conflict in the present situation, although there could well be instances where municipal regulations and

conditions in granting rebuilding permits would require more expensive types of construction or materials than those used in the original structure. Even assuming a direct conflict, we would be constrained to hold that the consistent public policy declarations of this court giving primacy to the public law purposes of sec. 203.21, Stats., should not be defeated by applying sec. 66.05 (1) (c) in the manner urged by the insurance company.

Finally, defendant cites *Congress Bar & Restaurant v. Transamerica Ins. Co.* (1969), 42 Wis. 2d 56, 165 N. W. 2d 409, to urge that the court erred in awarding interest from October 9, 1967, sixty days from the submission of the proof of loss. Relying upon *Congress Bar,* page 71, defendant recites:

" 'As long as there is a genuine dispute about the amount that is due, the insurer should not have to pay interest until the amount has been determined and judgment entered thereon.' "

The *Congress Bar Case,* however, applied only to the recovery of interest on unliquidated claims. This, however, involves an action to recover under the provisions of a valued policy. 6 Appleman, *Insurance Law and Practice,* p. 181, sec. 3827, states the general rule: "Such a valuation is in the nature of a contract for liquidated damages."

In *Fox v. Milwaukee Mechanics' Ins. Co.* (1933), 210 Wis. 213, 217, 246 N. W. 511, this court held: "The valued policy law is nothing more nor less than a contract for liquidated damages in the event of total loss."

The award of prejudgment interest was proper.

*By the Court.*—Judgment affirmed.