Tracy Haynes, Plaintiff-Appellant,

v.

American Family Mutual Insurance Company,
Defendant-Respondent.†

Court of Appeals

*No. 2014AP395. Submitted on briefs September 30, 2014.
—Decided November 4, 2014*

## 2014 WI App 128

(Also reported in 857 N.W.2d 478.)

† Petition for Review.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Michael P. Konz* and *Erik L. Fuehrer* of *Gabert, Williams, Konz & Lawrynk, LLP*, Appleton.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Robert C. Burrell, Joshua B. Cronin* and *Dieter J. Juedes* of *Borgelt, Powell, Peterson & Frauen, S.C.*, Milwaukee.

Before Curley, P.J., Fine and Kessler, JJ.

¶ 1. FINE, J.  Tracy Haynes appeals the trial court's orders in favor of her insurer, American Family Mutual Insurance Company, holding that she was not entitled to recover from American Family:   (1) the full value of her policy as the result of a fire at her home, and (2) statutory interest on settlement money that Haynes contends the insurance company should have paid earlier. We reverse on full value, affirm on statutory interest, and remand with directions.

## I.

¶ 2.  This case concerns an insurance policy issued by American Family to Haynes covering her home, which she also used for day care, and her efforts to collect from American Family the full value of that policy after a fire significantly damaged her home on May 29, 2012. The City of Milwaukee issued a Raze Order dated July 10, 2012. According to the Raze Order, Haynes's home was assessed at $23,200. American Family insured the house for $244,800. The core material facts are not disputed.

¶ 3.  The Raze Order is the operative document. American Family got a copy of the Raze Order "on or about July 20, 2012." The Raze Order recited that the

89

home "is now unfit for human habitation, further occupancy or use[,] and is unreasonable to repair." The Order directed Haynes to "raze, and remove" the home "within twenty (20) days after the service of this order upon you." The Order also recited why the home was "unreasonable to repair," drawing its conclusion from the formula set out in Wis. Stat. § 66.0413(1)(c), which we reprint below. The Raze Order says:

> It has been determined that the cost to repair the above-referenced building(s) exceeds 50 percent of the assessed value of the improvements divided by the ratio of the assessed value to the recommended value as last published by the Wisconsin Department of Revenue for the City of Milwaukee, that such repairs are presumed unreasonable, and that this building is a public nuisance.

Section 66.0413(1)(c) provides as material:

> [I]f a municipal governing body, building inspector or designated officer determines that the cost of repairs of a building described in par. (b)1. would exceed 50% of the assessed value of the building divided by the ratio of the assessed value to the recommended value as last published by the department of revenue for the municipality within which the building is located, the repairs are presumed unreasonable for purposes of par. (b)1.

Wisconsin Stat. § 66.0413(1)(b)1, referenced by § 66.0413(1)(c), says that the homeowner has the option to repair the building *if* the unreasonable-to-repair conclusion in § 66.0413(1)(c) does not apply. Section 66.0413(1)(b) provides:

> The governing body, building inspector or other designated officer of a municipality may:
>
> 1. If a building is old, dilapidated or out of repair and consequently dangerous, unsafe, unsanitary or

90

otherwise unfit for human habitation and *unreasonable to repair*, order the owner of the building to raze the building *or, if the building can be made safe by reasonable repairs, order the owner to either make the building safe and sanitary or to raze the building, at the owner's option.*

(Paragraphing altered; emphasis added.) As we have seen, the conclusion in § 66.0413(1)(c) applies to Haynes's home because of the disparity between the home's assessed valuation and the cost to repair. All of this is important because the legislature requires the insurance company to pay the "full value" of the policy if "the property is wholly destroyed":

> Whenever any policy insures real property that is owned and occupied by the insured primarily as a dwelling and the property is wholly destroyed, without criminal fault on the part of the insured or the insured's assigns, the amount of the loss shall be taken conclusively to be the policy limits of the policy insuring the property.

Wis. Stat. § 632.05(2).[1]

¶ 4. Haynes argued the following:

- The Raze Order, by implementing Wis. Stat. § 66.0413(1)(c), provides that the property cannot be repaired;

- The property was thus "wholly destroyed" within the meaning of Wis. Stat. § 632.05(2) because it could not, as dictated by § 66.0413(1)(c), be repaired.

- Thus, American Family owes her the full "amount of the loss" because under § 632.05(2) "the amount of

---

[1] American Family does not dispute that Haynes's home was used by her "primarily as a dwelling." *See* Wis. Stat. § 632.05(2).

the loss shall be taken conclusively to be the policy limits of the policy insuring the property."

American Family disagreed.

¶ 5. American Family and Haynes came up with various cost-of-repair/actual-cash-value estimates for the home. On June 23, 2102, American Family got a cost-of-repair estimate from Sid Grinker Restoration, Inc., of $146,906. Haynes got a cost-of-repair estimate from Brew City Contractors on June 29, 2012 of $201,444.61. On July 11, 2012, American Family sent to Haynes an "estimate of damages" headed "Total ACV [actual cash value] Settlement." The letter set out its estimate that the home had a "Replacement Cost Value" (bolding omitted) of "130,947.62" and proposed an actual-cash-value of $129,947.62, which the letter indicated accounted for a $1,000 deductible. One week later, by letter dated July 19, 2012, to Haynes, American Family sent new estimates as "details of your settlement": a "Replacement Cost Value" (bolding omitted) settlement of $170,012.46, "Less Recoverable Depreciation" (bolding omitted) of 38,433.72 to equal an actual-cash-value of $131,578.74. American Family's letter said that the "estimate is what we expect to be the reasonable cost to repair or replace the property." American Family paid $131,578 on October 9, 2012.[2]

¶ 6. American Family got Grinker to pull a repair-permit for Haynes's home, but Haynes objected and the City revoked the permit on August 28, 2012. Haynes's home has now been razed. Neither Haynes nor American Family appealed the Raze Order, as they could have.[3]

---

[2] The Record does not explain how or why the seventy-four cents was dropped.

[3] WISCONSIN STAT. § 66.0413(1)(h) provides: "A person affected by an order issued under par. (b) may within the time

¶ 7. In an attempt to defeat the Raze Order's declaration that it would be unreasonable to repair Haynes's home and therefore that American Family had to pay the full value of the policy, American Family submitted to the trial court an affidavit dated October 15, 2012, by Michael Demski, a condemnation inspector for the City of Milwaukee Department of Neighborhood Services and the person who prepared the Raze Order. He explained that when he evaluated Haynes's property after the fire, he "determined that the cost of repairs was in the range of at least $75,000.000 to $100,000.00," and that "[s]ince the estimated repair cost exceeded the assessed value of the property, which was $20,900.00, I concluded that the Subject Property was a condemnation candidate." As we have seen, the Raze Order recited that the assessed value of Haynes's home was $23,200, which apparently included the land on which the home stood. In any event, the value of her dwelling was within the disparity formula in WIS. STAT. § 66.0413(1)(c).

¶ 8. Contrary to what the Raze Order provided, however, and contrary to the mandate of WIS. STAT. § 66.0413(1)(c) (if "the cost of repairs of a building . . . would exceed 50% of the assessed value of the building divided by the ratio of the assessed value to the recommended value as last published by the department of revenue for the municipality within which the building

provided by s. 893.76 apply to the circuit court for an order restraining the building inspector or other designated officer from razing the building or forever be barred." WISCONSIN STAT. § 893.76 provides: "An application under s. 66.0413(1)(h) to a circuit court for an order restraining the inspector of buildings or other designated officer from razing and removing a building or part of a building and restoring a site to a dust-free and erosion-free condition shall be made within 30 days after service of the order issued under s. 66.0413(1)(b) or be barred."

is located, the repairs are presumed unreasonable"), Demski averred that he determined that Haynes's home "can be made safe by reasonable repairs and therefore, I provided Ms. Haynes the option of either (1) making the Subject Property safe through repairs or (2) razing the Subject Property." As noted, however, the Raze Order never gave that option and that option, Haynes argues, is contrary to § 66.0413(1)(c).

¶ 9.   American Family also submitted to the trial court an affidavit dated October 17, 2012, by Terrence R. Gannon, an American Family "Property Claim Field Manager." Gannon averred that on May 29, 2012, Haynes told American Family about the fire to her home. His affidavit also said that he spoke to Demski on June 4, 2012, to see whether Haynes "had permission to repair the damages to her property." Gannon averred that Demski told him that Haynes "had the option to repair the property or raze the property." Gannon also averred that "Demski explained to American Family that if Ms. Haynes elected to repair the Subject Property, then the raze order would be withdrawn, and Ms. Haynes would have one year to repair the property." Of course, as we have seen, the Raze Order was not issued until July 10, 2012, so Gannon's averment that he was told on June 4, 2012, that it would be "withdrawn" does not make any sense. Further, as we have also seen, no one appealed the Raze Order.

¶ 10.   Gannon's affidavit also asserted that "[h]aving obtained authorization from Inspector Demski to repair the property, American Family proceeded to adjust the insurance claim." As noted, by letter dated October 9, 2012, American Family's lawyers sent to Haynes an American Family check for $131,578. This was more than thirty days after July 19, 2012, when, as we have seen, American Family said that it was willing

94

to settle for that amount. The letter indicated that the money was a settlement "payment for the undisputed Actual Cash Value of the damages to Ms. Haynes' dwelling."

¶ 11. The trial court based its decision that American Family did not owe Haynes the policy's full value on its determination that despite the Raze Order, which no one appealed, Haynes could "rebuild," and that Milwaukee approved. The trial court relied on Demski's affidavit that, as paraphrased by the trial court, Milwaukee "almost always gave the property owner the right to repair." Thus, the trial court concluded that "the undisputed facts show that the option remains open to her to rebuild, therefore she cannot say that she has suffered a constructive total loss." Further, the trial court noted that at the time of the hearing, Haynes's home was "still standing. That's what the pictures show and what I saw when I drove by there."[4]

¶ 12. The trial court also ruled that American Family did not owe Haynes interest on the $131,578 payment. In a stipulation incorporated in the trial court's order, we have only two issues on this appeal: (1) whether American Family owes Haynes the full value of the policy, $244,800, and (2) whether American Family owes Haynes interest on the $131,578 payment. Haynes does not argue that she should get statutory interest on the $244,000 full value. *See State*

---

[4] Although not material to our decision because the unappealed Raze Order conclusively established that Haynes could not rebuild her home, and that, as explained in the main body of this opinion, American Family owes Haynes the full value of the policy, a trial judge may not view *ex parte* matters that the parties dispute. *American Family Mutual Ins. Co. v. Shannon*, 120 Wis. 2d 560, 561–569, 356 N.W.2d 175, 176–180 (1984).

*v. Allen*, 2004 WI 106, ¶ 26 n.8, 274 Wis. 2d 568, 587 n.8, 682 N.W.2d 433, 442 n.8 (issue not argued is forfeited).

## II.

¶ 13. The issues on this appeal turn on the applicability of statutes. Thus, our review is *de novo*. *See State v. Turnpaugh*, 2007 WI App 222, ¶ 2, 305 Wis. 2d 722, 725, 741 N.W.2d 488, 490 (statutory interpretation is *de novo*).

### A. *Full Value.*

¶ 14. Although the trial court determined that Haynes's home had not been physically destroyed, that is not the test. "Real property owned and occupied by the insured which is partially destroyed but ordered destroyed under a fire ordinance or similar law shall be considered wholly destroyed for purposes of s. 632.05 (2), Stats." Wis. Admin. Code § INS 4.01(2)(h) (Aug. 14, 2014). Section INS 4.01 applies here because it is consistent with the statute to which it applies. *See UFE Inc. v. Labor and Industry Review Commission*, 201 Wis. 2d 274, 282, 548 N.W.2d 57, 60 (1996) ("[I]f an administrative agency has been charged with the statute's enforcement, a court may also look to the agency's interpretation.").

¶ 15. As noted in Part I, Wis. Stat. § 632.05(2) is the provision that requires insurance companies to pay their insured the full value of the insured-value of the property under these circumstances:

> Whenever any policy insures real property that is owned and occupied by the insured primarily as a dwelling and the property is wholly destroyed, without criminal fault on the part of the insured or the insured's assigns, the amount of the loss shall be taken conclusively to be the policy limits of the policy insuring the property.

*Ibid.* "The valued policy law was designed to discourage owners from over-insuring property while simultaneously thwarting insurers from collecting excessive premiums." *Seider v. O'Connell*, 2000 WI 76, ¶ 54, 236 Wis. 2d 211, 237, 612 N.W.2d 659, 672. As we show below, § 632.05 kicks in whenever, as here, the damaged property cannot be reasonably repaired under the formula set out in Wis. Stat. § 66.0413(1)(c).

¶ 16. As we have seen, under Wis. Stat. § 66.0413(1)(c), property may not be repaired "if a . . . building inspector or designated officer determines that the cost of repairs . . . would exceed 50% of the assessed value of the building divided by the ratio of the assessed value to the recommended value as last published by the department of revenue for the municipality within which the building is located." That is the situation here. Thus, Haynes's home was "wholly destroyed" within the meaning of Wis. Stat. § 632.05(2). *See Gambrell v. Campbellsport Mutual Ins. Co.*, 47 Wis. 2d 483, 490, 177 N.W.2d 313, 316 (1970) ("An administrative order of a municipal building inspection department directing the razing of a burned building is a legislatively approved declaration that for public policy reasons the damage to the property constitutes a total loss."). *See also City of Appleton v. Brunschweiler*, 52 Wis. 2d 303, 309, 190 N.W.2d 545, 548 (1971) ("[I]f the repairs to a building are unreasonable as defined in the statute the building must be razed even though it could

be made safe by the expenditure of unreasonable cost of repairs."). Of course, the statutes' command trumps any contrary analysis or post-hoc assessment by Demski that he sets out in his affidavit. *See Milwaukee County v. Schmidt*, 52 Wis. 2d 58, 66, 187 N.W.2d 777, 781 (1971) ("[A]n administrative officer has no discretion to disregard the language of a statute in performing his duties."). Simply put, the focus is on whether repairs are reasonable under the statutory formula, not whether elements of the structure survived the fire. The unappealed Raze Order, which, as we have seen, applied the mandated statutory formula, is conclusive.

¶ 17.   American Family owes Haynes $244,800 off-set by what American Family has already paid Haynes, as set out in the trial court's order and we remand for the entry of an appropriate order.

B.   *Interest.*

¶ 18.   As we have seen, American Family offered to settle Haynes's loss by sending her a check for $131,578, which she cashed. Haynes argues that she is entitled to twelve-percent interest on this amount because:   (1) the amount was fixed by the settlement offer; and (2) American Family paid it more than thirty days after American Family had said what it owed.

¶ 19.   Haynes relies on WIS. STAT. § 628.46, which, as material, provides:

> (1) Unless otherwise provided by law, an insurer shall promptly pay every insurance claim. A claim shall be overdue *if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of the loss. If such written notice is not furnished to the insurer as to the entire claim, any*

98

*partial amount supported by written notice is overdue if not paid within 30 days after such written notice is furnished to the insurer.* Any part or all of the remainder of the claim that is subsequently supported by written notice is overdue if not paid within 30 days after written notice is furnished to the insurer. Any payment shall not be deemed overdue when the insurer has reasonable proof to establish that the insurer is not responsible for the payment, notwithstanding that written notice has been furnished to the insurer. For the purpose of calculating the extent to which any claim is overdue, payment shall be treated as being made on the date a draft or other valid instrument which is equivalent to payment was placed in the U.S. mail in a properly addressed, postpaid envelope, or, if not so posted, on the date of delivery. All overdue payments shall bear simple interest at the rate of 12% per year.

(2) Notwithstanding sub. (1), *the payment of a claim shall not be overdue until 30 days after the insurer receives the proof of loss required under the policy or equivalent evidence of such loss. . . .*

. . . .

(3) This section applies only to the classes of claims enumerated in s. 646.31(2).

(Emphasis added.) As material, § 646.31(2)(c) provides: "(c) *Owners of property interests.* The first-party claim of a person having an insurable interest in or related to property with a permanent location in this state at the time of the insured event." (Italics in original.)

¶ 20. American Family argues that WIS. STAT. § 628.46 does not apply because Haynes did not meet the following statutory prerequisites:

- She did not "furnish[] written notice of the fact of a covered loss and of the amount of the loss."

- She also did not furnish a "partial amount supported by written notice."

Rather, as we have seen, American Family says that it did all the "furnish[ing]." Stated another way, Haynes never gave written notice to American Family that American Family owed Haynes $131,578 or that this was American Family's sum-certain liability (rather than American Family's settlement).

¶ 21. Interest is only due under these statutes "when there is clear liability, a sum certain owed, and written notice of both" is given to the insurance company. *Kontowicz v. American Standard Ins. Co. of Wisconsin*, 2006 WI 48, ¶ 2, 290 Wis. 2d 302, 307, 714 N.W.2d 105, 107. "First, there can be no question of liability on the part of the insured. Second, the amount of damages must be in a sum certain amount. Third, the claimant must provide written notice of both liability and the sum certain amount owed." *Id.*, 2006 WI 48, ¶ 2, 290 Wis. 2d at 307, 714 N.W.2d 105, 107–108. American Family's settlement offer of $131,578 does not satisfy Wis. Stat. § 628.46 because $131,578 is not the statutorily requisite undisputed liability, even though the compromise settlement of $131,578 was reduced to contract so the insurance company owed a fixed sum. *Singler v. Zurich American Ins. Co.*, 2014 WI App 108, ¶¶ 19–20, 357 Wis. 2d 604, 615, 616, 855 N.W.2d 707, 712, 713.[5] *Singler* explains:

Here, Zurich failed to pay a *contractual settlement* of an insurance claim within thirty days. [Robert C.] Singler

[5] *Singler v. Zurich American Ins. Co.*, 2014 WI App 108, 357 Wis. 2d 604, 855 N.W.2d 707, was decided on Sept. 16, 2014, after the parties submitted their briefs, and we asked them for post-*Singler* supplemental submissions, which we have considered.

cites no authority for the proposition that § 628.46 can apply when an insurer fails to pay an amount required by a settlement agreement resolving a disputed claim, and we are not aware of any case applying the statute under those circumstances.

Further, while liability is undisputed in this case, we do not agree with Singler that his damages were in a "sum certain amount." *See Kontowicz*, [2006 WI 48, ¶ 48,] 290 Wis. 2d [at 328, 714 N.W.2d at 117]. Although Zurich agreed to pay Singler $1.9 million, it did not concede that amount represented the actual amount of Singler's damages. Instead, Zurich simply agreed to pay Singler $1.9 million in full settlement of his claim, presumably because Zurich did not want to take the risk a jury would award Singler more and wanted to avoid the expense of a seven-day jury trial. The settlement amount reflects the parties' compromise, not the actual amount of Singler's damages. Thus, while the settlement was in a sum certain amount, Singler's damages were not.

*Singler*, ¶¶ 19–20 (emphasis in *Singler*). As we can see, the same analysis applies here and American Family did not owe twelve-percent interest on the $131,578 even though that amount was fixed by the accepted settlement. Accordingly, we affirm the trial court's order denying Haynes twelve-percent interest.

*By the Court.*—Order affirmed in part, reversed in part, and cause remanded with directions.