# COURT OF APPEALS
## DECISION
## DATED AND FILED

## April 22, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1717**

STATE OF WISCONSIN

Cir. Ct. No. **2020CV323**

IN COURT OF APPEALS
DISTRICT III

DISTINGUISHED MULTIPLYING BUILDINGS (D.M.B.), LLC,

PLAINTIFF-APPELLANT,

V.

GERMANTOWN MUTUAL INSURANCE COMPANY,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Eau Claire County: EMILY M. LONG, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

¶1 GILL, J. Germantown Mutual Insurance Company ("Germantown") issued a business owners insurance policy to Distinguished Multiplying Buildings ("D.M.B."), LLC, that provided coverage for direct physical loss of a building owned by D.M.B. After a fire caused extensive

damage to the building, a municipal government body determined that the building should be razed pursuant to WIS. STAT. § 66.0413 (2023-24).[1]  Thereafter, D.M.B. filed a claim with Germantown for the total loss of the building.

¶2    Germantown informed D.M.B. that coverage was excluded under the policy for portions of the building ordered razed but not damaged by the fire.  The exclusion cited by Germantown stated that Germantown would "not pay for loss or damage caused directly or indirectly by … [t]he enforcement of or compliance with any ordinance or law … [r]equiring the tearing down of any property, including the cost of removing its debris."  ("Ordinance or Law Exclusion").  The circuit court agreed, and it denied D.M.B.'s motion for declaratory and summary judgment for coverage under the policy.

¶3    We affirm the circuit court's decision.  In doing so, we reject D.M.B.'s arguments on appeal that Wisconsin courts have held that raze orders under WIS. STAT. § 66.0413 conclusively demonstrate a total loss, regardless of: (1) the building being repairable and the raze order not being challenged; (2) the policy's terms; and (3) the inapplicability of the valued policy law, *see* WIS. STAT. § 632.05(2).[2]  Under the plain meaning of the policy, including the

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

[2] D.M.B.'s briefing on appeal fails to comply with the Rules of Appellate Procedure in two respects.  First, D.M.B. references certain facts by citing only to its appendix, in violation of WIS. STAT. RULE 809.19(1)(d)-(e).  *See* **United Rentals, Inc. v. City of Madison**, 2007 WI App 131, ¶1 n.2, 302 Wis. 2d 245, 733 N.W.2d 322 (stating that the appendix is not the record).  Second, D.M.B.'s brief-in-chief does not comply with RULE 809.19(8)(bm), which states that a "brief … must have page numbers centered in the bottom margin using Arabic numerals with sequential numbering starting at '1' on the cover."  The pagination requirement ensures that the numbers on each page of a brief "will match … the page header applied by the eFiling system, avoiding the confusion of having two different page numbers" on each page of a brief.  S. CT. ORDER 20-07, 2021 WI 37, 397 Wis. 2d xiii (eff. July 1, 2021).

(continued)

Ordinance or Law Exclusion, a reasonable insured would understand that D.M.B.'s additional costs incurred as a result of the raze order—beyond those resulting from the fire—were not covered because those costs were the result of loss or damage caused by the enforcement of, or compliance with, the raze order.

## BACKGROUND

¶4 The facts underlying this appeal are undisputed. D.M.B. owns several apartment buildings in Eau Claire which Germantown covered under a business owners insurance policy issued to D.M.B. Under the policy, Germantown agreed to pay "for direct physical loss" to a building "unless the loss is excluded or limited" elsewhere in the policy.

¶5 In February 2020, a fire caused extensive damage to parts of one of D.M.B.'s apartment buildings. Following an inspection of the building, the City of Eau Claire determined that the building was dilapidated as a result of the fire and required "necessary repairs so extensive that the building is dangerous, unsafe, unsanitary, and otherwise unfit for human habitation and unreasonable to repair. The costs for repair and rehabilitation exceed fifty percent … of [the building's] full assessed value." Accordingly, the city labeled the building a public nuisance and issued a "raze order" pursuant to WIS. STAT. § 66.0413(1)(c). The raze order directed D.M.B. to "raze and remove the … building, or parts thereof and all accessory structures, and restore the site to a dust free and erosion free condition,

As a high-volume, appellate court, we are entitled to expect briefing to follow the basic Rules of Appellate Procedure. We caution D.M.B.'s counsel that future violations of the Rules of Appellate Procedure may result in sanctions. *See* WIS. STAT. RULE 809.83(2).

3

as required by" § 66.0413 "and the applicable ordinances" within thirty days. D.M.B. did not challenge the raze order.

¶6    D.M.B. filed a claim with Germantown pursuant to the policy. D.M.B. claimed that the fire, coupled with the raze order, constituted a "constructive total loss," requiring Germantown—pursuant to the policy's terms—to pay the actual cash value to repair or replace the entire building.

¶7    Germantown determined that the Ordinance or Law Exclusion in the policy precluded coverage for portions of the building ordered razed but not damaged by the fire. Specifically, Germantown cited the following language in the policy, which appeared under a heading titled, "Exclusions":

> 1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.
>
>    a.  Ordinance Or Law
>
>        (1) The enforcement of or compliance with any ordinance or law:
>
>           ….
>
>              (b) Requiring the tearing down of any property, including the cost of removing its debris.
>
>        (2) This exclusion … applies whether the loss results from:
>
>              (a) An ordinance or law that is enforced even if the property has not been damaged; or
>
>              (b) The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling

> or demolition of property or removal of its debris, following a physical loss to that property.

(Formatting altered.) However, Germantown acknowledged that coverage existed for those portions of the building and personal property destroyed by the fire, and it paid D.M.B. for those damages.

¶8    D.M.B. then filed the present lawsuit, alleging breach of contract, bad faith, and statutory interest claims against Germantown. Pertinent here, D.M.B. also filed a motion for declaratory and summary judgment, arguing that Wisconsin case law dictates that "the issuance of a raze order" under WIS. STAT. § 66.0413 "results in a constructive total loss of the structure subject to the raze order." D.M.B. requested a declaration that the building was a constructive total loss and that the Ordinance or Law Exclusion did not apply to its claim.

¶9    In response to D.M.B.'s declaratory and summary judgment motion, Germantown argued that WIS. STAT. § 66.0413 does not "eradicate exclusions and exceptions within insurance policies." Furthermore, Germantown asserted that the plain language of the Ordinance or Law Exclusion barred coverage in this case for "those portions of the [building] that were not harmed by the fire but instead taken down as a result of the raze order." (Formatting altered.) Thus, Germantown requested that "[i]f any declaratory ruling is made, it should be that the [Ordinance or Law Exclusion] applies" and that "Germantown has no obligation to pay [D.M.B.] for losses to portions of the [building] that were damaged by enforcement of the raze order rather than fire."

¶10    The circuit court denied D.M.B.'s declaratory and summary judgment motion. The court stated that the "raze order simply means the city determined that the cost of repairing the building was greater than [fifty percent]

of the actual value of the building." Further, the court stated that there was no evidence, aside from the raze order, suggesting that the building was, in fact, irreparable. Thus, according to the court, "but for the raze order, this would not be a constructive total loss.… This is an increased cost that is a direct result of the enforcement of an ordinance or law." The court therefore concluded that the Ordinance or Law Exclusion unambiguously applied. However, the court did not grant declaratory or summary judgment in favor of Germantown because it determined that there was a factual issue as to "what costs were incurred from the [raze] order versus the costs that were incurred from the fire."[3]

¶11 The circuit court later granted D.M.B.'s motion to compel Germantown to appraise the cost of repairing the building. It ordered an appraisal panel to determine, among other things, the cost to repair the portions of the building damaged by fire, smoke, and water. The appraisal panel found that the cost to repair those portions of the building was over $400,000, and Germantown paid D.M.B. the difference between its original payment and the appraised amount. The court held that the "appraisal award conclusively established the amount of loss" for the building, and it dismissed the lawsuit in a final order because, consistent with its order denying D.M.B.'s declaratory and summary judgment motion, D.M.B. was not entitled to any further payment from Germantown.

¶12 D.M.B. now appeals, arguing that the circuit court erred by denying its declaratory and summary judgment motion.

---

[3] D.M.B. filed a petition for leave to appeal the circuit court's order denying its motion for declaratory and summary judgment. We denied that petition.

**DISCUSSION**

¶13     Both declaratory and summary judgment are proper procedural devices for resolving insurance disputes.  *Young v. West Bend Mut. Ins. Co.*, 2008 WI App 147, ¶6, 314 Wis. 2d 246, 758 N.W.2d 196.  "Under either procedural vehicle, our standard of review is de novo because we must interpret and apply the terms of [the] policy."  *Wiegert v. TM Carpentry, LLC*, 2022 WI App 28, ¶19, 403 Wis. 2d 519, 978 N.W.2d 207; *see also Dostal v. Strand*, 2023 WI 6, ¶¶17-18, 405 Wis. 2d 572, 984 N.W.2d 382.  Thus, we treat the circuit court's denial of D.M.B.'s declaratory and summary judgment motion as a denial of summary judgment.  *See Young*, 314 Wis. 2d 246, ¶6.  Summary judgment shall be awarded if "there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law."  WIS. STAT. § 802.08(2).

¶14     This case also requires us to interpret and apply statutory language and policy language, which we do independently of the circuit court.  *See Teschendorf v. State Farm Ins. Cos.*, 2006 WI 89, ¶9, 293 Wis. 2d 123, 717 N.W.2d 258; *Wadzinski v. Auto-Owners Ins. Co.*, 2012 WI 75, ¶10, 342 Wis. 2d 311, 818 N.W.2d 819.  "We construe … policy language from the perspective of a reasonable insured, giving the words used their common and ordinary meaning."  *Wadzinski*, 342 Wis. 2d 311, ¶11.  "When the 'terms of an insurance policy are plain on their face, the policy must not be rewritten by construction.'"  *Secura Supreme Ins. Co. v. Estate of Huck*, 2023 WI 21, ¶12, 406 Wis. 2d 297, 986 N.W.2d 810 (citation omitted).  "[S]tatutory interpretation 'begins with the language of the statute.  If the meaning of the statute is plain, we ordinarily stop the inquiry.'"  *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted).  We also interpret statutory

language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes." *Id.*, ¶46.

¶15     The sole dispute on appeal is whether the Ordinance or Law Exclusion applies to D.M.B.'s claim.  The parties agree that the policy provides an initial grant of coverage for D.M.B.'s claim and that if the Ordinance or Law Exclusion applies, no exception to the exclusion reinstates coverage. *See American Fam. Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶24, 268 Wis. 2d 16, 673 N.W.2d 65.

¶16     On appeal, D.M.B. renews its argument that Germantown was required to pay D.M.B. the full replacement cost of the building pursuant to the policy because the building was a "constructive total loss" as a matter of law. D.M.B.'s argument on appeal is, essentially, that when a structure is deemed irrepairable by a municipal governing body under WIS. STAT. § 66.0413, a raze order is merely a conclusion that the structure is not repairable.  In other words, there was one loss in this case—the fire—and the city determined that the fire destroyed the entire building.  According to D.M.B., the "raze order is not a loss in and of itself, rather, it is simply a recognition by the [city] that … [the] building should not be repaired due to the extensive damage caused by the fire."

¶17     WISCONSIN STAT. § 66.0413(1)(b)1. provides that a municipal governing body may, "if a building is old, dilapidated, or out of repair and consequently dangerous, unsafe, unsanitary, or otherwise unfit for human habitation and unreasonable to repair, order the owner of the building to raze the building."  Alternatively, "if the building can be made safe by reasonable repairs," the governing body may "order the owner to either make the building safe and sanitary or to raze the building, at the owner's option." *Id.*  However, "the repairs

are presumed unreasonable for purposes of" § 66.0413(1)(b)1. if the governing body "determines that the cost of repairs of a building … would exceed 50 percent of the assessed value of the building divided by the ratio of the assessed value to the recommended value as last published by the department of revenue."[4] Sec. 66.0413(1)(c). A person affected by a raze order issued under § 66.0413(1)(b) may, within a specified time frame, "apply to the circuit court for an order restraining the building inspector or other designated officer from razing the building or forever be barred." Sec. 66.0413(1)(h).

¶18 We conclude that the fire and the subsequent raze order are separate losses for insurance coverage purposes under the facts of this case. Even if the raze order rendered the building a total loss, WIS. STAT. § 66.0413 does not prohibit the application of the Ordinance or Law Exclusion in this case where D.M.B. did not occupy the building and no evidence in the record suggests that the building was irrepairable.

¶19 WISCONSIN STAT. § 66.0413 does not prevent the application of the Ordinance or Law Exclusion in this case, and it does not require a conclusion that a fire and a resulting raze order are one loss. As Germantown argues, § 66.0413(1)(c) "merely creates a presumption" for a municipality that repairs are unreasonable "*for purposes of*" § 66.0413(1)(b)1. when the cost of repair exceeds

---

[4] We note that WIS. STAT. § 66.0413(5) was enacted in December 2021. *See* 2021 Wis. Act 107, § 3. Section 66.0413(5) prevents a governing body from issuing a raze order under § 66.0413(1)(b) "for an insured dwelling" (if the insurer has provided the required certification) unless the governing body, among other things, "determines that the estimated cost of repairs" exceeds "70 percent of the insurance policy limits of the insured dwelling." Sec. 66.0413(5)(c)5., (e). Because § 66.0413(5) was enacted *after* the fire and raze order relevant to this case, it has no bearing on the case at hand. *See* 2021 Wis. Act 107, § 4 ("This act first applies to real property that incurs damage on the effective date of this subsection.").

fifty percent of the assessed value. The statute, contained within WIS. STAT. ch. 66 ("General Municipality Law"), says nothing about insurance policy exclusions. The legislature has created numerous statutory provisions on insurance, *see* WIS. STAT. chs. 600-655, but D.M.B. fails to cite any relevant laws affecting policy exclusions as they relate to raze orders (except for WIS. STAT. § 632.05, which, as explained below, does not apply in this case).

¶20     D.M.B. does cite WIS. STAT. § 631.15(3m), which states, "A policy that violates a statute or rule is enforceable against the insurer as if it conformed to the statute or rule." Section 631.15(3m) does not, however, change the plain meaning of WIS. STAT. § 66.0413, which does not have any bearing on, or relevance to, the applicability of the type of exclusion seen in this case.

¶21     D.M.B. also cites WIS. STAT. § 632.103, which concerns insurance settlements. Barring certain exceptions, "every property insurance policy issued or delivered in this state … that insures real property located in a 1st class city against loss caused by fire or explosion shall provide for payment of any final settlement under the policy in the manner described in" WIS. STAT. §§ 632.102 to 632.104.[5] WIS. STAT. § 632.101(1). In turn, §§ 632.102 and 632.103 provide that an insurance company may be required to reimburse a first-class city for costs incurred in enforcing WIS. STAT. § 66.0413 from a final settlement. *See* §§ 632.102(1), 632.103(2)(a)1.; *see also* § 66.0413(1)(f) ("Any portion of the cost charged against the real estate that is not reimbursed under [§] 632.103(2) from funds withheld from an insurance settlement may be assessed and collected

---

[5] Milwaukee is Wisconsin's only first-class city. *See* WIS. STAT. § 62.05; **Madison Teachers, Inc. v. Walker**, 2014 WI 99, ¶87 n.23, 358 Wis. 2d 1, 851 N.W.2d 337.

as a special tax."). D.M.B. therefore contends that § 66.0413 "clearly recognize[s] that insurance funds may be involved and provides that such funds may be collected to cover the cost of a loss," which, according to D.M.B., "indicates that Wisconsin law does not find that a raze order is a separate loss."

¶22    We disagree.  A "final settlement" in this context means, generally, "the *amount that an insurer owes under a property insurance policy* to the named insured and other interests named in the policy for loss to any insured building or other structure affixed to land that is caused by fire or explosion."  WIS. STAT. § 632.10(3) (emphasis added).  Thus, if a policy excludes coverage for any loss caused by a raze order, an insurer does not owe those costs to the named insured, and a first-class city's ability to obtain reimbursement for costs associated with enforcing § 66.0413 will be limited to the special tax provision under WIS. STAT. § 66.0413(1)(f).  In other words, a first-class city's ability to collect funds from a final settlement for costs associated with enforcing § 66.0413 is necessarily dependent on the amount an insurer owes under a policy.

¶23    Additionally, we reject D.M.B.'s assertion that a raze order and a fire are one loss for insurance coverage purposes because a building owner's "one and only option" is to raze the building once a municipal governing body determines that it would be unreasonable to repair the building and issues a raze order.  Contrary to D.M.B's suggestion, a "person affected by" a raze order may, within a specified time frame, "apply to the circuit court for an order restraining the building inspector or other designated officer from razing the building." *See* WIS. STAT. § 66.0413(1)(h).  The court will then determine "whether the raze order is reasonable."  *Id.*  Accordingly, D.M.B. could have challenged the raze order in this case if it believed the building was repairable.

¶24    D.M.B. further argues that had it "sought to repair the damaged building, the city would have denied permitting as it was not repairable."[6] D.M.B. has cited no authority requiring a building to be considered a constructive total loss solely as the result of a challengeable raze order when the valued policy law, which we discuss in greater detail below, does not apply. The circuit court correctly determined that the record lacked any evidence, aside from the raze order, suggesting that the building was not repairable. *See* WIS. STAT. § 802.08(2). In other words, "but for the raze order, this would not be a constructive total loss." The court then properly stated that there was a factual issue as to "what costs were incurred from the [raze] order versus the costs that were incurred from the fire." This factual issue was later resolved after the court ordered a damage appraisal.

¶25    D.M.B. asserts that our state supreme court has "recognized that an insurer is to pay the 'full face value of the policy' when a building's owner is required to destroy an insured building as the result of a covered loss." *See generally **Gambrell v. Campbellsport Mut. Ins. Co.**,* 47 Wis. 2d 483, 487-93, 177 N.W.2d 313 (1970); ***Gimbels Midwest Inc. v. Northwestern Nat'l Ins. Co.**,* 72 Wis. 2d 84, 240 N.W.2d 140 (1976).

¶26    However, in ***Gambrell*** and ***Gimbels***, our state supreme court addressed whether the valued policy law required the insurance companies in those cases to pay the full face value of buildings damaged by fires and ordered

---

[6] Somewhat contradictorily, D.M.B. asserts that Germantown "had the ability to challenge the raze order but failed to do so." (Formatting altered.) It is unclear why Germantown's failure to challenge the raze order should be held against it where, as we explain in this opinion, Germantown was not liable for the costs associated with the raze order.

razed.  *Gambrell*, 47 Wis. 2d at 485, 487-93; *Gimbels*, 72 Wis. 2d at 89, 91.  Thus, *Gambrell* and *Gimbels* each concerned the valued policy law, and they do not support D.M.B.'s position that a raze order is not a loss in and of itself.

¶27    The valued policy law provides:

> TOTAL LOSS.  Whenever any policy insures real property that is owned and *occupied by the insured primarily as a dwelling* and the property is *wholly destroyed*, without criminal fault on the part of the insured or the insured's assigns, the amount of the loss shall be taken conclusively to be the policy limits of the policy insuring the property.

WIS. STAT. § 632.05(2) (emphasis added).  Binding case law demonstrates that a municipal governing body's raze order renders a building "wholly destroyed"— i.e., a "total loss"—under the valued policy law only when the building is occupied primarily as a dwelling.  *Haynes v. American Fam. Mut. Ins. Co.*, 2014 WI App 128, ¶¶2-3, 16, 359 Wis. 2d 87, 857 N.W.2d 478; *Gambrell*, 47 Wis. 2d at 485, 487-93; *Gimbels*, 72 Wis. 2d at 89, 91; *see also* WIS. ADMIN. CODE § Ins. 4.01(2)(h) (Nov. 2024) ("Real property owned and occupied by the insured which is partially destroyed but ordered destroyed under a fire ordinance or similar law shall be considered wholly destroyed for purposes of [§ 632.05(2)].)."

¶28    In *Gambrell*, the court held that "where there is a total loss, the language of an insurance contract … limiting liability to the actual loss, must yield to the public[ ]policy mandate of the statute requiring face-value recovery." *Gambrell*, 47 Wis. 2d at 489.  The court held that "[a]n administrative order … directing the razing of a burned building is a legislatively approved declaration that for public policy reasons the damage to the property constitutes a total loss." *Id.* at 490.

¶29 The court in *Gimbels* elaborated on this conclusion, stating that "when, as a result of an insured loss, the owner is precluded from rebuilding and is required by the municipality to destroy the insured building, a constructive total loss results and the valued policy law applies to require the insurer to pay the full face value of the policy." *Gimbels*, 72 Wis. 2d at 91; *see also A & A Enters. v. City of Milwaukee*, 2008 WI App 43, ¶32, 308 Wis. 2d 479, 747 N.W.2d 751 (quoting *Gimbels* and stating that the court did "not dispute that a constructive total loss occurs following the issuance of a raze order" (formatting altered)).

¶30 The *Gambrell* and *Gimbels* courts offered no position as to whether a fire, which leads to a raze order, constitutes one occurrence because that issue was irrelevant to whether the valued policy law applied.[7] The court in those cases held that a raze order wholly destroyed the buildings at issue and, therefore, the valued policy law applied. The valued policy law applied because the buildings that were wholly destroyed by a raze order were owned and occupied by the insureds. *See Haynes*, 359 Wis. 2d 87, ¶16. Here, because D.M.B. did not occupy the property as a dwelling, the valued policy law does not apply, and the holdings in *Gambrell* and *Gimbels* are therefore inapplicable to the facts of this case.[8]

---

[7] The version of the valued policy law interpreted in *Gambrell v. Campbellsport Mutual Insurance Co.*, 47 Wis. 2d 483, 485, 487-93, 177 N.W.2d 313 (1970), and *Gimbels Midwest Inc. v. Northwestern National Insurance Co.*, 72 Wis. 2d 84, 89, 91, 240 N.W.2d 140 (1976), was materially different from the current version of the statute in that it did not include an insured occupation requirement. *Compare* WIS. STAT. § 203.21 (1973-74), *with* WIS. STAT. § 632.05(2). Thus, during the period relevant to the facts underlying those cases, the valued policy law applied even if the insured did not occupy the building as a dwelling. Here, it is undisputed that D.M.B. did not occupy the building as a dwelling and that the valued policy law does not apply.

[8] D.M.B. also cites *Hertog v. Milwaukee Mutual Insurance Co.*, 415 N.W.2d 370, 371-73 (Minn. Ct. App. 1987), where the Minnesota Court of Appeals, among other things, applied Minnesota's valued policy law, which is similar to Wisconsin's valued policy law. Because Wisconsin's valued policy law is not implicated by D.M.B.'s insurance claim, we do not find *Hertog* relevant.

*See* ***Haynes***, 359 Wis. 2d 87, ¶16; ***Drangstviet v. Auto-Owners Ins. Co.***, 195 Wis. 2d 592, 600, 536 N.W.2d 189 (Ct. App. 1995), ***Auto-Owners Ins. Co. v. City of Appleton***, 2017 WI App 62, ¶6 & n.3, 378 Wis. 2d 155, 902 N.W.2d 532.

¶31    Next, D.M.B. directs our attention to cases from outside of Wisconsin in support of its position that the raze order was not a separate loss from that created by the fire.  In ***Danzeisen v. Selective Insurance Co.***, 689 A.2d 798, 799 (N.J. Super. Ct. App. Div. 1997), an insured's "non-conforming use" "structure" was damaged by a fire resulting in the roof collapsing.  The local government determined that the "building had been damaged to an extent greater than fifty percent of its assessed valuation," and it invoked an ordinance which provided that "any non-conforming structure destroyed to an extent greater than fifty percent of its assessed valuation shall not be reconstructed."  ***Id.*** "Accordingly, [the government] denied plaintiff permission to reconstruct and ordered that the remainder of the structure be demolished."  ***Id.***  The policy included an exclusion similar to the Ordinance or Law Exclusion at issue in this case.  *See* ***id.*** at 799-800.

¶32    On appeal, the ***Danzeisen*** court considered whether the insurer was "liable for the actual cash value of only the damaged portion of the premises or whether, by reason of application of the municipal ordinance, [the insured] is entitled to recover for a 'constructive total loss' of the entire building."  ***Id.*** at 799. Following New Jersey precedent, the court held that the "general rule" in New Jersey was that if "by reason of public regulations rebuilding is prohibited the loss is total, although some portion of the building remains which might otherwise have been available in rebuilding."  ***Id.*** (citation omitted).  This general rule was not altered by the exclusion present in the policy, which the court interpreted as applying "generally to losses from governmental orders to destroy, as where a

structure has become unsafe by reason of deterioration or other non-catastrophic causes." *Id.* at 799-801. The court reasoned that if the insurer "had sought to exclude responsibility for enhanced losses occasioned by a governmental requirement to raze the balance of property substantially destroyed by a catastrophic occurrence, it could have stated the exclusion with far greater clarity than it did in the policy at issue." *Id.* at 801.

¶33 *Danzeisen* is not persuasive here for two reasons. First, the *Danzeisen* court did not state that an exclusion could not overcome New Jersey's "general rule" that a structure's loss is total even if some portion of the building remains that might otherwise have been available to use in a subsequent rebuild. In fact, the case that the *Danzeisen* court cited for this proposition stated that the general rule applies "[i]n the absence of a contrary provision in the policy." *See Feinbloom v. Camden Fire Ins. Ass'n*, 149 A.2d 616, 618 (N.J. Super. Ct. App. Div. 1959); *Danzeisen*, 689 A.2d at 799.

¶34 Second, we agree with Germantown that the *Danzeisen* court failed to apply the plain meaning of the unambiguous exclusion, contrary to Wisconsin precedent. *See Secura*, 406 Wis. 2d 297, ¶12. Like the Ordinance or Law Exclusion in this case, the exclusion in *Danzeisen* provided that the insurer would "not pay for loss or damage caused directly or indirectly by … [t]he enforcement of any ordinance or law … [r]equiring the tearing down of any property, including the cost of removing its debris." *See Danzeisen*, 689 A.2d at 799-800. Coverage for the loss or damage was "excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." *Id.* at 799. The exclusion did not contain any language limiting its applicability to "deterioration or other non-catastrophic causes." *See id.* at 799-801. As Germantown observes on

appeal, the "*Danzeisen* opinion thus defied a basic tenet of Wisconsin insurance law that forbids courts from injecting language into a policy that does not exist."

¶35 Lastly, D.M.B. asserts that a reasonable insured would not read the policy to exclude from coverage damages sustained as a result of a raze order because "this would render coverage essentially illusory" and the policy does not "reference" raze orders. Instead, D.M.B. argues, a reasonable insured would understand the Ordinance or Law Exclusion to apply to "buildings that become deteriorated or dilapidated over time."

¶36 Again, we disagree. The policy plainly states that Germantown will not pay for "loss or damage caused directly or indirectly by … [t]he enforcement of or compliance with any ordinance or law … [r]equiring the tearing down of any property." Clearly, a raze order fits within the meaning of "any ordinance or law … [r]equiring the tearing down of any property." Conversely, the policy's terms do not limit the Ordinance or Law Exclusion to "deteriorated or dilapidated" buildings.

¶37 Furthermore, the policy states that the Ordinance or Law Exclusion applies regardless of whether the loss resulted from "[a]n ordinance or law that is enforced even if the property has not been damaged" and that "[s]uch loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." A reasonable insured would understand the policy to mean what it says, and, as applied to the raze order in this case, the order directly caused "loss or damage" by requiring D.M.B. to destroy the entire building, even those portions that were not damaged by the fire. Thus, a reasonable insured would understand that Germantown would pay for damages caused by the fire but not those caused by the raze order.

*By the Court.*—Order affirmed.

Not recommended for publication in the official reports.