No. 31,104.

Jacob Kotlarsky, *Appellant*, v. The Fidelity Union Fire Insurance Company and Firemen's Insurance Corporation of New Jersey, *Appellees*.

(21 P. 2d 305.)

Opinion filed May 6, 1933.

*A. E. Crane, Kenneth Briggs* and *Edward Rooney,* all of Topeka, for the appellant.

*Robert Stone, James A. McClure, Robert L. Webb, Beryl R. Johnson* and *Ralph W. Oman,* all of Topeka, for the appellees.

The opinion of the court was delivered by

Smith, J.: This was an action on a fire insurance policy. Judgment was for plaintiff in the amount of $75. Plaintiff appeals and argues that the judgment should have been for the full amount of the policy.

Plaintiff was the owner of a frame barn located within the fire limits of Topeka. It was insured for $400 in defendant company. One night the barn caught fire. It was partially destroyed. The next day the fire marshal sent plaintiff the following letter:

"Upon a recent inspection of the old barn at the rear of 607 N. Kansas avenue of which you are the owner:

"We find that the fire which occurred last night and the dilapidated condition of the building previous to the fire, has caused this building to become dangerous and unsafe.

"You are hereby notified that this building must be taken down and removed from the premises, without delay.

"Kindly give this your immediate attention."

This action is to recover for the full amount of the policy under the valued policy law, which is R. S. 1931 Supp. 40-905, and is as follows:

"Whenever any policy of insurance shall be written to insure any improvements upon real property in this state against loss by fire, tornado or lightning, and the property insured shall be wholly destroyed, without criminal fault on the part of the insured or his assigns, the amount of insurance written in such policy shall be taken conclusively to be the true value of the property insured, and the true amount of loss and measure of damages, and the payment of money as a premium for insurance shall be *prima facie* evidence that the party paying such insurance is the owner of the property insured: *Provided,* That any insurance company may set up fraud in obtaining the policy as a defense to a suit thereon."

The authority under which the fire marshal acted when he sent the letter in question is an ordinance of the city of Topeka. In part this ordinance is as follows:

"SEC. 102. Dangerous Structures. Section 13. Every building or part thereof (which) shall appear to the department to be especially dangerous by reason of bad condition of walls, over-loaded floors, defective construction and lack of guards against fire, or other causes, shall be held to be unsafe; and the building inspector, and his assistant, or any employee of the department shall immediately notify the owner or lessee to cause the same to be repaired, and shall also affix a notice of the dangerous character of the structure in a conspicuous place on the exterior wall of such buildings, and no person shall remove or deface such notice so affixed. The department may order that no person shall be permitted to enter, occupy or use such building until the same shall have been made safe, and may post such order in a conspicuous place on the exterior wall of such building, and thereafter until such building shall have been made safe, no person shall enter, occupy or use same, except for the purpose of repairing and making the same safe. The owner or party having an interest in such unsafe building or structure, upon being notified thereof in writing by the inspector, shall immediately cause the same to be made safe and secure; and if such building or part thereof shall be used for any purpose requiring a license therefor, the mayor may revoke said license in case of failure to comply with the notice served as herein provided. When the public safety requires immediate action, the inspector, or any employee of the department, may enter upon the premises with such assistance as may

be necessary, and cause the said structure to be made secure or taken, down without delay at the expense of such owner or party interested."

The theory upon which plaintiff based his right to recovery was the rule announced in many cases that where a building is insured for a certain amount and is so damaged by fire that the municipal authorities cause it to be removed or demolished, the owner can recover on his policy the same as though the building had been completely destroyed by fire.

The answer of defendant to this is, briefly, that in this instance the building was not so damaged that it could not be repaired and that the letter from the fire marshal, upon which plaintiff relies, was solicited by plaintiff.

There is a conflict in the evidence on the latter point. The plaintiff testified that he asked the fire marshal for permission to repair the building, while the fire marshal testified that plaintiff asked permission to rebuild the building.

For the purpose of this review these questions were settled by the jury in the answers to special questions, as follows:

"1. Could the fire damage have been repaired and the building made secure in a manner which would have received the approval of the fire marshal? A. Yes.

"2. If you answer question 1 in the affirmative, then what would have been the cost of repairing and replacing the burned portions of the building, using material of like kind and quality, in order to make said building secure? A. Seventy-five dollars ($75).

"3. Did the plaintiff make any objection to tearing down or removing the building in question? A. No.

"4. Did the plaintiff acquiesce in or consent to the order of the fire marshal that said building should be removed? A. Yes.

"5. Did the plaintiff invite or solicit the letter written to him by the fire marshal under date of April 15, 1931? A. Yes.

"6. Was any agent or representative of the defendant present at the time the order of the fire marshal was under consideration or given opportunity to be heard, or notice of the issuance of the order, prior to the making of the same? A. No.

"7. Did Mr. Jacob Kotlarsky ask the fire marshal on the 15th of April, 1931, for a permit to repair the burned building? A. No.

"8. Was the condition of the burned building, at the time the policy was issued, approximately the same as it was immediately before the fire? A. Yes.

"9. Has the plaintiff in this case been guilty of any fraud or bad faith in connection with any phases or transaction in connection with the loss in question? A. No.

"10. If you answer the foregoing question in the affirmative, then state in detail what the same consisted of. A. ———.

"11. Did the fire marshal use good faith in issuing the order of April 15, and on his own judgment? A. Yes.

"12. Was the order of April 15 by the fire marshal made upon the information gained by his personal inspection or otherwise? State what he acted on. A. Information and inspection.

"13. Was the building so burned as to be beyond repairing? A. No."

The first error urged by plaintiff is that the trial court should not have permitted the fire marshal to testify to anything that varied or contradicted his letter written to plaintiff. In this connection he points out that the letter was written after an independent investigation by the marshal. We have seen the letter. The testimony of which complaint is made was that plaintiff asked the witness not for permission to repair, but to rebuild, and that in the opinion of the fire marshal the building could have been repaired for about $50 and the reason the letter was written was that plaintiff did not ask to repair the building. It is urged that this evidence tended to contradict and vary the terms of a written instrument and was not admissible. The point is not good. In order for the rule against the use of parol evidence to vary the terms of a written instrument to apply the written instrument must be contractual in its nature. See 22 C. J. 1142, where it is said:

"A writing which does not vest, pass, nor extinguish any right either by contract, operation of law, or otherwise, but is used as evidence of a fact, and not as evidence of a contract or right, may be susceptible of explanation by extrinsic circumstances or facts."

The written instrument under discussion was not contractual in its nature, but was merely evidence of the action of the fire marshal. It did not operate to vest or pass any property right.

Plaintiff next urges that he should have judgment for the full amount of the policy on account of the answers to questions 7, 8, 9, 10, 11 and 12. We have seen what these answers were. All the answers must be considered together. When we so consider these findings, in order to sustain the argument of plaintiff this court would have to say that when a building is damaged by fire but can be repaired and made secure by the expenditure of $75 in a manner of which the fire marshal would approve; when the owner consents to and solicits an order of the fire marshal to tear the building down; when no representative of the insurance company carrying the risk is permitted to be heard on the matter of the issuance of the order; when the owner of the building does not ask permission to repair it; when the condition of the building is the

same at the time of the fire as it was at the time the policy was issued; when the owner of the building is guilty of no bad faith; when the fire marshal uses good faith in the issuance of the order and the order is made upon his personal investigation, and the building is not so burned as to be beyond repair, the owner of the building could proceed to demolish it and recover the full amount of the policy.

In considering the above proposition we should also consider the fact that the fire marshal included in his order a statement that the order was issued partly on account of "the dilapidated condition of the building previous to the fire." Such a statement of the case makes it plain that the thing which caused the removal and destruction of the barn was not the fire, against which defendant had insured plaintiff, but its dilapidated condition which the jury found had been the case for some time previous to the fire and the apparent desire of plaintiff to tear the barn down for some purpose unknown to us, but not an unlikely situation in view of its condition.

The plaintiff cites many authorities which hold that the insurance companies are liable in the full amount of the policy where the building in question was partially destroyed by fire and municipal authorities ordered its destruction. None of them, however, goes so far as to hold the company liable for the full amount where the building could have been repaired by the expenditure of a small percentage of the amount of the policy and the municipal authorities would have permitted such repair and the order to destroy was solicited by the owner.

Under the provision of the policy where the loss was not a total loss, and where the building could be repaired, as in the present case, the liability of the insurance company is limited to the amount it would have cost to repair the building. See 26 C. J. 353, where it is said:

"And where a statute or the policy limits the amount of recovery to the cost of restoring or replacing the property the measure is not the cash or market value of the damage or loss, but the cost of such restoration or replacement."

In this case the fire marshal testified and the jury found that the building could have been repaired to the satisfaction of the fire marshal at a cost of $75. This was the amount for which the court gave judgment.

The judgment of the trial court is affirmed.