AUTO-OWNERS INSURANCE COMPANY,
Plaintiff-Appellant,†

v.

CITY OF APPLETON, Defendant-Respondent,
Lowell McLARTY and Carol McLarty, Defendants.

Court of Appeals

*No. 2016AP1227. Submitted on briefs February 15, 2017.
—Decided August 29, 2017.*

2017 WI App 62

(Also reported in 902 N.W.2d 532.)

† Petition for Review Filed.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Jeremy T. Gill, Katelyn P. Sandfort* and *Justin F. Wallace* of *Nash, Spindler, Grimstad & McCracken LLP,* Manitowoc.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Emily Truman,* assistant city attorney of Appleton.

Before Stark, P.J., Hruz and Seidl, JJ.

¶ 1. HRUZ, J. Auto-Owners Insurance Company appeals an order denying its motion for an injunction prohibiting the razing of Lowell and Carol McLartys' home following a garage fire. While unclear, it appears Auto-Owners argues the raze order in this case was invalid because the relevant provisions of the raze order statute, WIS. STAT. § 66.0413 (2015–16),[1] do not authorize a building damaged as a result of a sudden fire to be razed. Auto-Owners also argues the raze order was unreasonable because the home could be repaired at a reasonable cost, the raze order was issued as a result of the insured's inquiry to the municipality, and the building inspector did not personally inspect the premises before issuing the raze order. Finally, Auto-Owners contends that smoke and

---

[1] All references to the Wisconsin Statutes are to the 2015–16 version unless otherwise noted.

water damage remediation must be excluded when calculating a building's "cost of repair." We reject each of Auto-Owners' arguments, primarily because they are unsupported by the statute's plain language and evident purpose, and because they produce an absurd result. Accordingly, we affirm.

## BACKGROUND

¶ 2. On August 26, 2015, the McLartys' residence in Appleton caught fire. It is undisputed the fire caused structural damage to the attached garage. There was also non-structural damage throughout the home, including water damage from the fire suppression efforts and smoke damage. The property was insured by Auto-Owners, with a policy limit of $287,500. The McLartys notified Auto-Owners of the fire the day after it occurred. They did not live in the residence following the fire.

¶ 3. The McLartys contacted a damage restoration company, ServPro, which provided a quote in early October 2015 for "[fire restoration] of garage/main floor/second story/ related to the fire in garage." The estimate for such restoration was approximately $130,600. The following day, ServPro contacted the McLartys with a revised estimate of approximately $112,850 for a reduced scope of work that included "rebuild only[,] not . . . cleaning & demo & smoke sealing."

¶ 4. The City's inspection supervisor, Kurt Craanen, testified that, as a matter of routine, he was notified of the fire the day after it occurred. Craanen did not take any action based on that report. However, after the McLartys received the ServPro estimate, their attorney contacted Craanen and notified him

that the costs to repair the home were considerably more than half the home's value. The McLartys' attorney requested information regarding whether the City would issue a raze order for the building, as repairs appeared presumptively unreasonable under WIS. STAT. § 66.0413(1)(c), given the cost of repairs as compared to the home's value.

¶ 5. Craanen requested a copy of the ServPro estimate from the McLartys' attorney. After reviewing the estimate, Craanen reviewed property records showing the building's assessed value was approximately $124,000.[2] Pursuant to the raze order statute, Craanen concluded repairs were not reasonable. On October 8, 2015, he issued an order requiring that the McLartys' residence be razed within thirty days. Auto-Owners received a copy of the raze order on October 14.

¶ 6. Auto-Owners objected to the raze order. Razing the home would result in a total loss, requiring payment of the homeowner policy limits pursuant to the valued policy law, WIS. STAT. § 632.05.[3] At Auto-Owners' request, the City stipulated to extend the time within which to raze the home, allowing the McLartys until February 1, 2016. In the interim, Auto-Owners commenced this action by filing a motion pursuant to WIS. STAT. § 66.0413(1)(h) seeking a restraining order prohibiting the razing of the McLartys' residence. Auto-Owners asserted the raze order was unreasonable and demanded it be allowed to repair the residence. Auto-Owners also challenged Craanen's conclusion that repairs were unreasonable, noting the

---

[2] The total assessed value of the McLartys' property (land plus improvements) was approximately $150,000.

[3] *See Haynes v. American Family Mut. Ins. Co.*, 2014 WI App 128, ¶ 16, 359 Wis. 2d 87, 857 N.W.2d 478; *see also* WIS. ADMIN. CODE § INS 4.01(2)(h) (Feb. 2013).

ServPro estimate included approximately $76,500 in repairs for smoke remediation, which amount Auto-Owners asserted was not to be considered when calculating the cost of repair under the raze order statute.

¶ 7. The circuit court held a temporary injunction hearing, at which Craanen was the only witness to testify. Craanen testified the City does not often issue raze orders, but he estimated he had personally ordered three in the past for fire damage, including one in August 2015. Craanen determined the fire had rendered the McClartys' residence "out of repair" under WIS. STAT. § 66.0413(1)(b)1., based on the fact the home required at least $112,000 in repairs and needed to be brought up to code. Craanen did not visit the McLartys' property until after he had issued the raze order, nor did he independently verify that the McLartys' repair estimate was correct.[4]

¶ 8. The parties presented argument following Craanen's testimony. Auto-Owners claimed the McLartys' home was not "out of repair" because the statute only applies to conditions persisting over a long period of time, and a sudden fire does not qualify. Auto-Owners also challenged the raze order as unreasonable and arbitrary, based on: (1) Craanen's broadly defining "out of repair" as meaning "out of code," which in Auto-Owners' view left too much discretion to the City; and (2) Craanen's failure to independently inspect the

[4] However, at the temporary injunction hearing, Craanen testified that the ServPro estimate the McLartys received did not include all costs required to bring the residence up to code. The McLartys' residence was constructed in the late 1960s, prior to the adoption of the Uniform Dwelling Code, and according to Craanen there would be significant expenses associated with properly insulating the residence, as well as ensuring that the rafters and roof system were code compliant.

property. Auto-Owners also argued that smoke and water damage remediation should not be considered in determining the feasibility of repairs, and that the raze order statute should not be interpreted "as a way [for an insured] to obtain an insurance windfall." The City asserted that the McLartys' home satisfied each of the statutory criteria for the raze order to issue, and that the raze order was not unreasonable or arbitrary.

¶ 9. The circuit court denied Auto-Owners' motion at a subsequent hearing. The court specifically found Craanen credible and that he had acted professionally and in good faith when issuing the raze order. The court concluded that, following the fire, the McLartys' residence was "out of repair" under the raze order statute, and that the home was rendered uninhabitable. The court also determined it was unreasonable to repair the home given the estimated cost of repairs compared to the home's value. Consequently, the court concluded Auto-Owners had not satisfied its burden of showing that the raze order was unreasonable, and it also concluded that the City had not acted arbitrarily. The court then entered a written order formally denying Auto-Owners' motion. Auto-Owners now appeals.[5]

## DISCUSSION

¶ 10. As an initial matter, we note that any issues involving the obligations of the McLartys and

---

[5] The circuit court imposed a stay pending appeal, but the order provided the stay would not affect the McLartys' rights to "voluntarily convey, repair, demolish or take any other actions with respect to the property that the McLartys would have absent the stay." Based on statements in the parties' briefing on appeal, we understand that the McLartys demolished the building while this appeal was pending.

Auto-Owners pursuant to their insurance policy are not before us. Rather, the parties to this appeal are Auto-Owners and the City of Appleton, and the issue is whether the City justifiably issued the raze order in this case. Auto-Owners' arguments in that regard primarily focus on interpreting the raze order statute, Wis. Stat. § 66.0413.

¶ 11. Statutory interpretation presents a question of law, which we review de novo. *Seider v. O'Connell*, 2000 WI 76, ¶ 26, 236 Wis. 2d 211, 612 N.W.2d 659. We begin with the statute's language; if that language yields a plain meaning, we ordinarily stop the inquiry. *State ex rel. Kalal v. Circuit Court for Dane Cty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. Language in a statute is generally given its common, ordinary and accepted meaning. *Id.* We interpret the language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶ 46.

¶ 12. Wisconsin Stat. § 66.0413 governs a municipality's authority to raze buildings within its jurisdiction.[6] Under the relevant subdivision here, a governing body, building inspector, or other designated officer of a municipality may:

> If a building is old, dilapidated or out of repair and consequently dangerous, unsafe, unsanitary or otherwise unfit for human habitation and unreasonable to repair, order the owner of the building to raze the

---

[6] The statute defines "raze a building" as the demolition and removal of the building and restoration of the site to a dust-free and erosion-free condition. Wis. Stat. § 66.0413(1)(a)2.

building or, if the building can be made safe by reasonable repairs, order the owner to either make the building safe and sanitary or to raze the building, at the owner's option.

Sec. 66.0413(1)(b)1. There is a general presumption that repairs are unreasonable when the municipality or its designee determines that the cost to repair a building would exceed fifty percent of the home's value, according to a specified formula.[7] Wis. Stat. § 66.0413(1)(c). It is undisputed that, in this case, the raze order issued based on Craanen's determinations that the McLartys' home was "out of repair" and that repairs could not be reasonably made.[8]

¶ 13. Auto-Owners argues that, for purposes of Wis. Stat. § 66.0413(1)(b)1., a building is not "out of repair" when it sustains sudden damage from a fire. It contends the raze order statute was designed to address the "aging and deterioration of buildings and homes within a municipality," and as such the statute contains "an unspoken or 'intrinsic'" temporal element. According to Auto-Owners, this temporal element permits razing only when a condition has negatively affected a building for a lengthy period of time.

---

[7] The value is calculated by dividing the property's assessed value by the ratio of the assessed value to the recommended value of the property for the municipality, as determined by the Wisconsin Department of Revenue. Wis. Stat. § 66.0413(1)(c).

[8] At certain points in its arguments before the circuit court and before this court, Auto-Owners asserted the statute should be read in the conjunctive to authorize razing only when a building is old, and dilapidated, *and* out of repair. As the circuit court correctly recognized, that argument is incompatible with the language of the statute, which uses the disjunctive "or." *See* Wis. Stat. § 66.0413(1)(b)1.

¶ 14. As even Auto-Owners acknowledges, its interpretation of the phrase "out of repair" is anything but evident from the statute's plain language. The legislature did not define the phrase "out of repair." Still, the phrase is simple and capable of a common understanding. *See Kalal*, 271 Wis. 2d 633, ¶ 45. Craanen testified he interpreted "out of repair" to mean that some aspect of the building required fixing or that the building was non-compliant with the relevant housing codes. We agree with this common-sense definition, and we add that a building can be "out of repair" for any of a number of reasons, including, as relevant here, a sudden fire or rapid exposure to some other damaging condition or element. The phrase itself connotes no sense that the condition rendering the building "out of repair" have existed for any particular length of time.

¶ 15. Auto-Owners believes such a definition creates a "free for all," and it urges us to interpret the statute to exclude conditions that are produced suddenly, such as the fire in this case. However, this argument ignores the remainder of Wis. Stat. § 66.0143(1)(b)1. Importantly, a building cannot be razed simply for being "out of repair." Rather, the municipality's razing authority is triggered only if the condition also renders the building "dangerous, unsafe, unsanitary or otherwise unfit for human habitation and unreasonable to repair." *Id.* We are not persuaded that interpreting "out of repair" broadly to refer to code violations or the existence of repairs necessary to make a residence inhabitable will lead to municipalities exercising their raze authority arbitrarily or doing so when repairs can reasonably be

made. After all, municipalities likewise are not permitted to raze all "old" buildings irrespective of whether they are "dangerous, unsafe, unsanitary or otherwise unfit for human habitation and unreasonable to repair."

¶ 16. Moreover, if a homeowner or other interested party believes the municipality has acted improperly in an individual case, the statute provides an avenue for judicial review. A person affected by a raze order has thirty days from the date of service to seek a temporary order restraining the municipality from exercising its razing authority. WIS. STAT. § 66.0413(1)(h). If the court determines the raze order is unreasonable, the municipality is prohibited from razing the building and from issuing another raze order until the building's condition has substantially changed. *Id.* Auto-Owners fails to explain why this procedure—which it used in this case—is inadequate to protect homeowners and other interested parties from any arbitrary or otherwise improper exercise of a municipality's razing authority.

¶ 17. Perhaps recognizing that its interpretation has no basis in the plain language of the phrase "out of repair," Auto-Owners seeks to impart a more restrictive meaning by employing the *ejusdem generis* canon of construction. *Ejusdem generis* literally means "of the same kind," and the principle applies when a general word is used in a statute and is either preceded or followed by specific words in a statutory enumeration. *State v. Popenhagen*, 2008 WI 55, ¶ 46, 309 Wis. 2d 601, 749 N.W.2d 611. The general word is construed to embrace only items similar in nature to the enumerated items. *Id.*, ¶ 47. Here, a municipality's razing authority may be invoked in only three

168

instances: when a building is old, is dilapidated, or is out of repair. The doctrine of *ejusdem generis* is of no help to Auto-Owners in this case because there is no "general" category of qualifying building conditions whose meaning might be ascertained by reference to the more-specific terms. Each of the three terms used in Wis. Stat. § 66.0413(1)(b)1. is general in nature.

¶ 18. We also disagree with Auto-Owners' related argument that an "unspoken" element—namely, the passage of time—underlies each of the building conditions necessary for a raze order to issue. Put another way, Auto-Owners asserts the terms "old," "dilapidated" and "out of repair" have "a single unifying characteristic—they all require time to take its toll on a building." As previously discussed, we reject the notion that the phrase "out of repair" necessarily requires that the condition of the building occur over a lengthy time period. The legislature made age an explicit triggering condition by allowing razing if a building is "old." "Dilapidated" means "decayed, deteriorated, injured, or fallen into partial ruin esp. because of neglect or misuse." *Dilapidated,* WEBSTER'S THIRD NEW INT'L DICTIONARY (unabr. 1993). Although a building can become dilapidated as a result of aging, the definition recognizes that "misuse" (which can occur suddenly) can also produce that condition. The same is true for a building being "out of repair."

¶ 19. Moreover, the fact that a building's age alone may specifically trigger a municipality's razing authority (as long as the statute's other requirements are satisfied) strongly counsels against also imparting a temporal element into the terms "dilapidated" and "out of repair." If those terms are interpreted to mean the municipality can only act after the passage of an

unspecified amount of time (the amount of which Auto-Owners never explains), what more do they add to the statute than the term "old?" In other words, by what logic would the legislature confer razing authority when a building is "old," but then also give razing authority when a building is "old plus out of repair?" Auto-Owners never attempts to explain the apparent surplusage produced by its interpretation. Whenever possible, we read statutory language to give reasonable effect to every word and avoid surplusage. *Kalal*, 271 Wis. 2d 633, ¶ 46.

¶ 20. Nor does the interpretation Auto-Owners advocates flow naturally from the statute's purpose. By its terms, Wis. Stat. § 66.0413(1) "is concerned with protecting the public from unsafe and unsanitary buildings." *See Donley v. Boettcher*, 79 Wis. 2d 393, 405, 255 N.W.2d 574 (1977); *CSO Servicing Corp. v. City of Eau Claire*, 196 Wis. 2d 77, 83, 536 N.W.2d 731 (Ct. App. 1995). Accordingly, the statute authorizes municipalities to ensure public safety by razing buildings that suffer from various defects and are "consequently dangerous, unsafe, unsanitary or otherwise unfit for human habitation and unreasonable to repair." Sec. 66.0413(1)(b)1. The statute is concerned with the negative condition of the building—not necessarily the underlying reason it suffers from that condition or how long that condition has existed.

¶ 21. Finally, Auto-Owners' interpretation of "out of repair" also produces absurdity. Auto-Owners does not dispute that a home can be significantly damaged by a fire or another sudden condition that renders it "dangerous, unsafe, unsanitary or otherwise unfit for human habitation and unreasonable to repair." Indeed, to dispute this proposition would itself

be absurd. If a home was not eligible to be razed under these circumstances, Wisconsin municipalities would be forced to tolerate dangerous, unsanitary or uninhabitable properties within their jurisdictions, or at a minimum they would be required to wait until some subsequent event independently caused the property to fall further into disrepair. Such an interpretation would jeopardize public safety and runs contrary to the statute's purpose. *See Smith v. Williams*, 2001 WI App 285, ¶ 21, 249 Wis. 2d 419, 638 N.W.2d 635 (noting the short time limitation for challenging a municipal raze order "enables a building inspector to act swiftly in order to prevent the public from any long exposures to the risks of an unsafe or unsanitary building").[9]

¶ 22. Auto-Owners emphasizes that the "McLarty home prior to the fire was well-maintained by all accounts" and was not "out of repair." As we have explained, this preexisting condition of the property does not matter under the statute. A building that becomes "out of repair" for any reason may be ordered razed as long as the other statutory requirements are met, including the requirement that the building be unreasonable to repair.[10] The condition of the McLarty

_____

[9] Auto-Owners asserts that reading WIS. STAT. § 66.0413(1)(b)1. to "give[] a municipality the authority to tear down a building that has not experienced the wear of time is an absurd result." Auto-Owners never actually explains why this is so. This omission is particularly problematic, especially in light of the plain absurdity that would result in prohibiting a raze order for a property that is "suddenly" severely destroyed by a fire or storm in a manner making it immediately "dangerous, unsafe, unsanitary or otherwise unfit for human habitation."

[10] To be clear, and contrary to Auto-Owners' arguments, our conclusions here do not "automatically bar any efforts to repair" a damaged residence. If a municipality determines a

residence prior to the fire is irrelevant, as long as after the fire it was "out of repair."

¶ 23. Next, Auto-Owners asserts the raze order in this case was issued arbitrarily. The only issue a court may decide in a WIS. STAT. § 66.0413(1)(h) proceeding is whether the raze order is reasonable. *See Smith*, 249 Wis. 2d 419, ¶ 13. However, unreasonableness, or the lack of a rational basis, is the hallmark of an arbitrary action. *Joint Sch. Dist. No. 1 v. State*, 56 Wis. 2d 790, 797, 203 N.W.2d 1 (1973). Because arbitrariness and unreasonableness are largely synonymous, we proceed to consider Auto-Owners' challenge to the reasonableness of the raze order in this case.

¶ 24. The reasonableness of a building inspector's order presents a question of law. *A & A Enters. v. City of Milwaukee ex rel. Dep't of Neighborhood Servs.*, 2008 WI App 43, ¶ 17, 308 Wis. 2d 479, 747 N.W.2d 751. Although we typically decide such issues independently, because a circuit court's reasonableness determination is intertwined with its factual findings supporting that conclusion, we give weight to the circuit court's determination. *Id.* However, its decision is not controlling. *Id.*

¶ 25. Auto-Owners appears to argue a raze order that is solicited by an insurance policyholder is always unreasonable when it is possible to repair the building. Auto-Owners acknowledges that no appellate case in Wisconsin has yet considered this issue; in several cases, the insurers failed to timely challenge a raze

building can be made safe by reasonable repairs, the property owner may elect to make such repairs. *See* WIS. STAT. § 66.0413(1)(b)1.

order and thereby lost the right to do so.[11] Nonetheless, Auto-Owners contends *Gimbels Midwest, Inc. v. Northwestern National Insurance Co. of Milwaukee*, 72 Wis. 2d 84, 240 N.W.2d 140 (1976), is of some persuasive value, as it "provided some insight into how Wisconsin courts would view a raze order that was not initiated by a municipality."

¶ 26. In *Gimbels*, the defendant insurer argued the assignee of its insured's interest "should not recover because it 'inspired' or 'encouraged' the issuance of the raze order." *Gimbels*, 72 Wis. 2d at 93. There was conflicting evidence on this point at the trial. *Id.* at 93–95. Our supreme court concluded the circuit court's factual finding—i.e., that there was no attempt to coerce the building inspector into issuing the raze order—was not clearly erroneous. *Id.* at 95.

¶ 27. *Gimbels* suggests that an insurer may challenge the insured's conduct in soliciting a raze order through an insurance coverage action. However, the *Gimbels* court observed that an insurer who wishes to assert that a building is in fact repairable and need not have been razed must do so through the exclusive statutory procedure for challenging a raze order, Wis. Stat. § 66.0413(1)(h). *See Gimbels*, 72 Wis. 2d at 98. In *Gimbels*, the insurer cited *Kotlarsky v. Fidelity Union Fire Insurance Co.*, 21 P.2d 305 (Kan. 1933), in an effort to persuade our supreme court to adopt the rule Auto-Owners proposes here: that a policyholder who solicits a raze order for a building that is repairable cannot recover the full policy limits under the valued policy law. *See Gimbels*, 72 Wis. 2d at 98. However, our

---

[11] *See, e.g., Gimbels Midwest, Inc. v. Northwestern Nat'l Ins. Co. of Milwaukee*, 72 Wis. 2d 84, 90, 240 N.W.2d 140 (1976); *Gambrell v. Campbellsport Mut. Ins. Co.*, 47 Wis. 2d 483, 487, 492–93, 177 N.W.2d 313 (1970).

supreme court observed that the "key to the [*Kotlarsky*] holding was the jury finding that the building could have been repaired *and* that the municipal authorities would have permitted that repair." *Gimbels*, 72 Wis. 2d at 98 (emphasis added). The insurer in *Gimbels* could not make this showing because it failed to timely challenge the raze order through the statutory procedure. *Id.*

¶ 28. Auto-Owners argues this case is different because, unlike the insurer in *Gimbels*, it *has* timely challenged the raze order. In essence, Auto-Owners argues that merely because it filed the present action, *Kotlarsky* applies and renders the raze order in this case per se unreasonable. This assertion represents a considerable overreading of *Gimbels*, which merely suggests that an insurer who later wishes to contest the payment of its policy limits under the valued policy law must establish, in a WIS. STAT. § 66.0413(1)(h) review, that a building was repairable and that the authorities would not have required it to be razed. *Gimbels* cannot be read to suggest that an insurer benefits from the *Kotlarsky* holding without independently establishing that the raze order was issued unreasonably.

¶ 29. In any event, in this case Auto-Owners has failed to make the requisite showing under *Gimbels*. Here, regardless of the identity of the party bringing the matter to the City's attention, the authorities *have* required the McLartys' property to be razed and, in turn, have not permitted its repair. Auto-Owners may disagree with the City's decision in that regard, but the City's independent decision is not flawed merely because it apparently undertook a raze analysis at the

174

initial request of the homeowner. The resulting raze order either satisfies the statutory criteria or it does not.

¶ 30. As such, we decline Auto-Owners' invitation to hold that a raze order issued at the request of a policyholder is per se unreasonable. Auto-Owners does not explain why the identity of the requesting party matters if the municipality ultimately determines the building's condition qualifies under the raze order statute. Indeed, Auto-Owners concedes "[t]he raze order statute provides a municipality with a tool to manage dangerous buildings, nothing more." Auto-Owners' interpretation of the statute would require municipalities to tolerate buildings that would otherwise be eligible for razing solely based on the fact that a homeowner initiated the raze request. This result is absurd and inconsistent with the statute's language and purpose.[12]

¶ 31. Auto-Owners also argues the raze order was unreasonable because it was issued less than two months after the fire, without Craanen having inspected or even viewed the property. However, the two key prerequisites to the issuance of a raze order—the property's assessed value and the extent of the damage —were fixed and thus ascertainable immediately following the fire. *See Gimbels*, 72 Wis. 2d at 93. As explained above, we see no justification in the statute's plain language or purpose for requiring a municipality

---

[12] Again, as stated earlier, *see supra* ¶ 10, we offer no opinion on the interaction between the facts leading to a municipality's raze order and any coverage obligations or duties between homeowners-policyholders and their insurers. Those issues are not before us in this appeal.

to wait a prescribed period of time before razing a building, as long as the statutory criteria are satisfied.

¶ 32. Moreover, Craanen's decision to order the property razed without having inspected or personally visited the property does not *ipso facto* render the raze order unreasonable. Auto-Owners points to no statutory requirement or other law requiring such a site visit. Based on the evidence before him, which included the ServPro estimate and the home's property records, Craanen could reasonably conclude that the home had suffered extensive fire and smoke damage that rendered it uninhabitable. Further, he could reasonably conclude that the extent of the required repairs trigged the presumption under WIS. STAT. § 66.0413(1)(c), because the cost of the repairs exceeded fifty percent of the home's value under the formula set forth in the statute. Other than Auto-Owners' argument that certain repair costs should have been excluded as a matter of law (which argument we address immediately below), Auto-Owners does not contend either the estimated costs of repair or the value of the property on which Craanen relied were erroneous.

¶ 33. Finally, Auto-Owners asserts the "cost of repairs" triggering the presumption under WIS. STAT. § 66.0413(1)(c) should not include costs to remediate smoke or water damage. Auto-Owners argues interpreting the statute to allow the razing of "structurally sound homes simply because the expensive smoke remediation will exceed [fifty percent] of the value of the home does not seem reasonable." It reaches this conclusion apparently because it does not view smoke and water damage as being caused by the fire itself.

¶ 34. Auto-Owners' argument in this regard is largely undeveloped. Auto-Owners hopes it can reduce the estimated cost of repairing the McLartys' home by

securing a declaration that, as a matter of law, smoke and water damage remediation is not part of the "cost of repair" of a fire. However, Auto-Owners never presents any compelling explanation for why this should be the rule. The fire is a "but for" cause of the smoke and water damage, and Auto-Owners does not dispute that such damage can render a home unlivable. *See Gimbels*, 72 Wis. 2d at 89 (observing that the raze order in that case found the building had sustained fire and water damage that triggered the WIS. STAT. § 66.0413(1)(c) presumption and rendered the building unfit for occupancy and unreasonable to repair).

¶ 35. Nor is there any basis in the statute for the rule Auto-Owners proposes. "Cost of repairs" under WIS. STAT. § 66.0413(1)(c) is not defined by the statute, but logically it refers to the cost to remedy all conditions that render the building deficient under § 66.0413(1)(b)1. These conditions include not only those that render the building "out of repair," but also those that affect the suitability of the building for human habitation. Indeed, the statute cannot be limited to structural damage because buildings that are subject to a raze order, yet are not in danger of structural collapse, must be condemned for human use by municipal officials. *See* WIS. STAT. § 66.0413(1)(br). The building may not be used for human habitation, occupancy or use until the necessary repairs have been made. *Id.*

¶ 36. In sum, we conclude the circuit court properly denied Auto-Owners' motion. Auto-Owners' interpretation of the phrase "out of repair" is unsupported by the statute's plain language and evident purpose, and it produces an absurd result. We also reject Auto-

177

Owners' assertion that the raze order in this case was unreasonable because the insured inquired about the feasibility of such an order and the building inspector did not visit the property prior to issuing the order. Finally, we conclude "cost of repairs" under the raze order statute includes all repairs necessitated by the condition or conditions justifying the razing, including, in the case of fire, the costs to remediate smoke and water damage necessary to make the building inhabitable.

*By the Court.*—Order affirmed.