COURT OF APPEALS
DECISION
DATED AND FILED

January 14, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1574**

STATE OF WISCONSIN

Cir. Ct. No. 2019CV55

IN COURT OF APPEALS
DISTRICT IV

CRAIG MUENCHOW,

PLAINTIFF-APPELLANT,

V.

CITY OF HORICON AND ROBERT J. FROH,

DEFENDANTS-RESPONDENTS.

APPEAL from an order of the circuit court for Dodge County: STEVEN G. BAUER, Judge. *Affirmed*.

Before Fitzpatrick, P.J., Kloppenburg, and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Craig Muenchow appeals an order authorizing the City of Horicon to raze a commercial building owned by Muenchow. Muenchow

challenges the circuit court's determination that the City's raze order was reasonable. He makes the following four arguments: (1) the circuit court erroneously exercised its discretion by excluding evidence of selective enforcement, bias, and retaliation; (2) the circuit court improperly interpreted and applied a statutory presumption; (3) the circuit court erroneously exercised its discretion by not considering the cost to raze the building; and (4) the trial evidence showed that the raze order was unreasonable. For the reasons that follow, we disagree and affirm.

## BACKGROUND

¶2 Muenchow has owned a commercial brick building in Horicon since 1998. In March 2016, a severe storm damaged the building's roof, allowing water to enter the interior. Muenchow did not repair the roof and over time, the wind and elements caused portions of the damaged roof to collapse into the building, which then caused portions of the second-story floor to collapse.

¶3 In February 2018, City Building Inspector Robert J. Froh issued a property maintenance notice to Muenchow requiring repairs to the exterior of the building as bricks were falling off the exterior wall, there was clutter and construction debris on the ground, and roofing materials were falling on to an adjacent street.

¶4 In December 2018, Froh obtained an inspection warrant to view the building. He observed that bricks were still falling off the east and west exterior walls of the building on to the pedestrian sidewalk, which had been roped off; that portions of the second story floor and floor joists were missing where numerous portions of the roof had collapsed; and that portions of the second story floor had buckled.

¶5      On January 10, 2019, Froh issued a raze order pursuant to WIS. STAT. § 66.0413(1)(b)1. (2017-18),[1] which authorizes the City to raze a building if an inspector determines that the building is "old, dilapidated or out of repair and consequently dangerous, unsafe, unsanitary or otherwise unfit for human habitation and unreasonable to repair …."

¶6      Muenchow applied to the circuit court for an order restraining the City from razing his building, asserting that the raze order was unreasonable. At trial, the parties agreed that there was substantial damage to the roof and the interior. The parties disputed whether the severity of the damage made the building dangerous, and if it could be made safe by reasonable repairs.

¶7      On Muenchow's behalf, engineer Rodger Enters testified that it would cost $5000 to repair the loose bricks and $50,000 to repair the roof. Muenchow testified that he received an estimate of $90,000 to fix the entire roof. The City's expert, Jeffrey Reep, testified that it would cost $30,000 to fix the damaged part of the roof, $250,000 to fix the entire roof, and between $25,000 and $30,000 to fix the damaged floor areas.

¶8      Based on the evidence, the circuit court upheld as reasonable Froh's determination that the building was "dangerous, unsafe, unsanitary or otherwise unfit for human habitation." In line with Reep's testimony, the court found that "[s]omeone could easily be hurt inside the building by falling through the floor or having parts of the floor or roof fall onto them." The court further found that "the brick wall on the east side of the building is unsupported at the roof, and could

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

collapse outward onto a public sidewalk, and loose bricks could fall onto a sidewalk."

¶9 Next, applying the statutory presumption in WIS. STAT. § 66.0413(1)(c), the circuit court determined that the building was unreasonable to repair. The court found that it would cost $60,000 to make the building safe, and that the assessed value divided by the current equalization value was $26,630 in 2019, and $72,000 in 2018. Finally, the court concluded that, because the repair cost exceeded fifty percent of those equalized values, repair was presumed unreasonable and the presumption was not rebutted because there was no evidence that the use of the presumption was without a rational basis. Muenchow appeals.

## DISCUSSION

### I. Pertinent Law.

¶10 Under WIS. STAT. § 66.0413(1)(b)1., a building inspector may:

> [i]f a building is old, dilapidated or out of repair and consequently dangerous, unsafe, unsanitary or otherwise unfit for human habitation and unreasonable to repair, order the owner of the building to raze the building or, if the building can be made safe by reasonable repairs, order the owner to either make the building safe and sanitary or to raze the building, at the owner's option.

¶11 WISCONSIN STAT. § 66.0413(1)(c) provides that, if the cost of building repairs would exceed fifty percent of the ratio of the building's assessed value divided by the ratio of the assessed value to the last recommended value

published by the Department of Revenue, then repairs are presumed to be unreasonable for purposes of this statute.[2]

¶12    If the raze order is challenged, WIS. STAT. § 66.0413(1)(h) requires the circuit court to determine whether the order is reasonable. A raze order is unreasonable if it lacks a rational basis. *Auto-Owners Ins. Co. v. City of Appleton*, 2017 WI App 62, ¶23, 378 Wis. 2d 155, 902 N.W.2d 532.

¶13    The reasonableness of a raze order presents a question of law. *A & A Enters. v. City of Milwaukee*, 2008 WI App 43, ¶17, 308 Wis. 2d 479, 747 N.W.2d 751. Although we typically review such issues independently, we give weight to the circuit court's reasonableness determination because it is intertwined with the factual findings underlying its conclusion. *Id.*

¶14    With these principles in mind, we proceed to address in turn each of the issues that Muenchow raises on appeal.

## II.  The Circuit Court Properly Exercised Its Discretion in Excluding Evidence of Selective Enforcement, Bias, and Retaliation.

¶15    Muenchow sought to introduce evidence that the City issued the raze order as retaliation for his involvement in local politics. When asked how this information was relevant, Muenchow suggested that the City was selectively enforcing the statute by "targeting him for this raze order when other like buildings are being ignored." The circuit court excluded the evidence as irrelevant to the reasonableness of the raze order.

---

[2] WISCONSIN STAT. § 66.0413 provides an exception for razing historic buildings under subsec. (3). That exception is not applicable in this case.

¶16 The circuit court's decision to exclude evidence is reviewed under an erroneous exercise of discretion standard. *Martindale v. Ripp*, 2001 WI 113, ¶28, 246 Wis. 2d 67, 629 N.W.2d 698. The reviewing court "will uphold a decision to admit or exclude evidence if the circuit court examined the relevant facts, applied a proper legal standard, and, using a demonstrated rational process, reached a reasonable conclusion." *Id.*

¶17 The circuit court properly exercised its discretion in excluding evidence of selective enforcement in the issuance of the raze order. At a hearing under WIS. STAT. § 66.0413(1)(h), the issue for the circuit court is whether the raze order is reasonable or unreasonable. As set forth in § 66.0413(1), the relevant factors in determining reasonableness concern the condition of the building and the cost of repair. On the facts presented, the court did not misuse its discretion by declining to consider evidence irrelevant to the statutorily-enumerated factors.

### III. The Circuit Court Applied the Proper Legal Standard.

¶18 In determining that the raze order was reasonable, the circuit court applied the statutory formula set forth in WIS. STAT. § 66.0413(1)(c), and presumed building repairs to be unreasonable. The court stated:

> Although the presumption under WIS. STAT. § 66.0413(1)(c) is rebuttable, the Court has stated: "Only if it can clearly be said that the operation of the legislative rule is without any rational basis in the individual case may a court find that the presumption is not applicable." *Posnanski v. City of West Allis*, 61 Wis. 2d 461, 469, 213 N.W.2d 51 (1973). This Court cannot find that the City of Horicon's building inspector's use of the presumption was without a rational basis. The Court finds that the raze order was reasonable and grants judgment in favor of the [City].

¶19 Muenchow argues that the circuit court erred in applying the statutory presumption by failing to consider the cost to raze the building and

6

instead finding that there was no evidence that the use of the presumption was without a rational basis. Citing *Posnanski*, Muenchow argues that the circuit court was required to consider evidence of the cost to raze the building along with its equalized value and repair cost in determining whether the statutory presumption was rebutted such that the raze order was arbitrary as applied to his building.

¶20 To the extent Muenchow argues that the circuit court must consider factors outside the statutory formula in every case, he reads *Posnanski* too broadly. While the *Posnanski* court acknowledged that in some circumstances it might be reasonable to allow repair costs exceeding fifty percent of the building's value, it emphasized that in light of "the legislature's declaration of a strong public policy to the contrary, this will be the rare case indeed." *Posnanski*, 61 Wis. 2d at 469. Noting that the statutory presumption "places a burden upon the property owner to show facts to the contrary," the *Posnanski* court held:

> Only if a property owner can show that the legislature's formula operates arbitrarily in the individual case can a court, after due consideration of the legislature's declared public policy of ridding the state of old and dilapidated buildings, make a finding that a reconstruction in excess of the 50 percent limit be allowed.

*Id.* at 468-69.

¶21 Consistent with *Posnanski*, the circuit court applied the proper legal standard when it determined that the statutory presumption was rational in these circumstances, and did not consider the cost to raze Muenchow's building.

¶22 Further, Muenchow's argument that the cost to raze was excessive in comparison to the cost to repair was not developed at trial. It is Muenchow, not the City, who carries the burden to show that application of the statutory

presumption is irrational, and Muenchow failed to offer evidence of the cost to raze the building. *See id.* at 468. Although Enters testified that he "would expect" the cost of razing the building to be "a lot" and "multiple times more expensive" than the cost to repair, this testimony was speculative and beyond his expertise.

¶23 Even Enters' testimony about repair costs was speculative. He admitted that the cost to repair the building "varies significantly from contractor to contractor," making it difficult to obtain a firm estimate. When asked to provide the estimated cost of repairing floor joists, Enters responded, "I wouldn't venture to guess." As such, while the circuit court considered the testimony of Enters to be credible in evaluating the structural integrity of the building, it found that he "didn't have a strong grasp on the cost of things as that was beyond the scope of the work he was asked to do."

¶24 In sum, Muenchow's argument that the cost to raze would be excessive in comparison to the cost to repair was not developed at trial. The circuit court applied the proper legal standard in determining that it was reasonable to apply the statutory presumption's formula, and that the raze order had a rational basis.

### IV. The Circuit Court Properly Exercised Its Discretion When It Did Not Consider the Cost to Raze the Building.

¶25 After upholding the raze order as reasonable, the circuit court stated the following:

> That being said, the Court believes that the elephant in the room was never directly confronted. It was touched on by [Muenchow] and [Muenchow's] expert who stated that the cost to raze the building would be multiples of the cost of making the building safe (and sanitary as the circumstances may dictate). The Court's concern is that the

> cost of razing this building will be extremely high and that [Muenchow] may lack the financial ability to raze the building. That issue will [be] for another day.

¶26 According to Muenchow, this demonstrates that the circuit court wanted to consider the cost to raze the building, but mistakenly believed that this factor was an irrelevant, improper consideration. We disagree.

¶27 As addressed in the preceding section, the circuit court's decision establishes that it was aware of and applied the proper legal standard. The cited paragraph concerning the "elephant in the room" does not show that the court believed the cost to raze was irrelevant but, rather, that it could not consider this issue due to the lack of credible evidence. Aside from Enters' speculative testimony, the only evidence concerning this issue came from Muenchow, who simply testified that "the gross cost of the razing would be detrimental" and it would be "time consuming and a very, very expensive task." Muenchow did not provide any meaningful evidence as to the actual cost to raze the building. Taken in context, the court's comments are simply an acknowledgment that, to the extent Muenchow intended to raise this issue at trial, he only "touched on" the matter and had not presented evidence sufficient for its consideration, making it "never directly confronted" or, the colloquial "elephant in the room."

## V.  Sufficient Evidence at Trial Established That the Raze Order Was Reasonable.

¶28 After considering documentary evidence and the testimony of Muenchow, Froh, Reep, and Enters, the circuit court found that the cost of repairs needed to make the building safe under WIS. STAT. § 66.0413(1)(b)1. was $60,000. The court explained:

9

The estimated cost to make the building safe varied greatly. First, the Plaintiff's expert, Rodger Enters, testified that he believed that it would cost about $5,000 to tuck point the bricks to prevent them from falling out and endangering pedestrians on the sidewalk below. He also estimated that it would cost more than $50,000 to repair the roof. The Court finds that Mr. Enters didn't have a strong grasp on the cost of things as that was beyond the scope of the work he was asked to do.

Mr. Muenchow testified that he had an estimate that it would cost $90,000 to repair the entire roof. Further, according to Mr. Froh, Mr. Muenchow told him that it would cost $200,000 to repair the roof.

The [City's] expert, Jeffrey Reep testified that it would cost $30,000 to repair the damaged part of the roof, and another $25,000 to $30,000 to repair the floor and $250,000 to repair the entire roof. The Court finds Mr. Reep's testimony to be most credible.

¶29    In arriving at the sum of $60,000, the court found as follows:

The Court finds that fixing the damaged part of the roof is required to prevent the east wall from collapsing and water from continuing to damage the structure. This work is required to make the building safe and would cost $30,000. Further, to make the floor safe, another $25,000 would need to be expended. Further, to keep bricks from falling into the street and make the wall safe, tuck pointing is needed and would cost an additional $5,000.…

¶30    Muenchow asserts that there was insufficient evidence to uphold the raze order as reasonable because the circuit court improperly considered repair costs beyond those necessary to make the building safe to the public. According to Muenchow, the trial evidence established that the building could be made safe for purposes of WIS. STAT. § 66.0413(1)(b)1., for about $10,000 in repairs to the east wall,[3] an amount less than half of the equalized assessed value. *See*

---

[3] Muenchow's estimate comprises $5000 to repair the bricks of the east wall plus another $5000 to upgrade that wall's bracing.

10

§ 66.0413(1)(c). He admits that repairs to the roof and floors are necessary in order to use the building, but contends that such repairs are not statutorily required because the building is currently unoccupied.

¶31 A reviewing court will typically determine questions of law independently. *Wassenaar v. Panos*, 111 Wis. 2d 518, 525, 331 N.W.2d 357 (1983). However, to the extent that this issue involves specific findings at trial, we review the circuit court's factual determinations under the clearly erroneous standard in WIS. STAT. § 805.17(2). We give "due regard" to the opportunity of the circuit court to judge the credibility of witnesses. *Id.*

¶32 Muenchow offers no authority for his position and we find it unpersuasive. First, to permit a building owner to avoid a raze order simply by barricading the exterior of the building to prohibit entry is inconsistent with the legislature's strong public policy of "ridding the state of old and dilapidated buildings." *Posnanski*, 61 Wis. 2d at 468-69. Second, we reject Muenchow's attempt to draw a distinction between repairs sufficient to make the building safe and those necessary to return it to commercial use. We have previously addressed this issue, stating that "out of repair" as used in the raze statute means that some aspect of the building requires fixing or that the building is non-compliant with respect to relevant building codes, while "[c]ost of repairs" means "the cost to remedy all conditions that render the building deficient under [WIS. STAT.] § 66.0413(1)(b)1." *Auto-Owners Ins.*, 378 Wis. 2d 155, ¶35.

¶33 The circuit court's determination that $60,000 in repairs was needed to make the building safe is consistent with the statutory standard, and its findings are supported by sufficient evidence. As to the roof, the court found that "fixing the damaged part of the roof is required to prevent the east wall from collapsing

and water from continuing to damage the structure," at a cost of $30,000, "to make the building safe." This finding is supported by sufficient evidence, including the testimony of Reep, that the collapsed roof created structural issues on the second floor; that three to four sections of the roof were missing, creating safety or structural concerns with the entire roof; and that, when he viewed the collapsed roof from the interior of the building, he became concerned that winds could cause a collapse of the wall toward the street.

¶34    Evidence at trial also established that flooring repairs are essential to remedy building deficiencies. The circuit court found that it would cost an additional $25,000 to "make the floor safe." This finding is supported by sufficient evidence, including the testimony of both Enters and Reep, the latter of whom the court found "most credible."

¶35    Muenchow's final argument is that the evidence established that the raze order was unreasonable because razing the building would be extremely expensive and the City "did not perform any investigation into the cost of razing the [b]uilding." In support of this proposition, Muenchow points to the statement of the circuit court expressing its concern that the cost to raze would be extremely high.

¶36    This argument fails for several reasons. First, the statute clearly places the burden of proof on Muenchow. WISCONSIN STAT. § 66.0413(1)(c) creates a presumption that repairs are unreasonable. This burden is on the owner, and may be overcome only if it is clear that the operation of the legislative rule is without any rational basis in the specific case. *Posnanski*, 61 Wis. 2d at 469.

¶37    Second, even assuming that razing costs are or could be a relevant consideration, Muenchow did not present sufficient evidence of such costs. As

previously discussed, the testimony of Muenchow and of Enters was speculative and lacking in specificity. Additionally, the circuit court found that Enters did not have a "strong grasp" on cost matters as this was beyond the scope of the work he was asked to do.

¶38 Third, while the circuit court expressed concern with the cost to raze, this statement was made in the context of its observation that Muenchow might lack the financial ability to have the building razed, not that the cost of razing should be a factor rebutting or rendering inapplicable the statutory presumption. There was sufficient evidence to support the court's concern; Muenchow testified that he lacked the financial ability to repair the building. This is unfortunate but ultimately irrelevant to the application of the statutory presumption on the facts of this case.

¶39 In sum, the circuit court understood the appropriate legal standard and entered findings consistent with that standard. The findings of the circuit court as to cost of repair are consistent with applicable statutory and case law, and are well supported by evidence presented at trial. The court properly applied the statutory standard in its determination that the cost to make the building safe would exceed the threshold established under the statutory formula.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.